Eugen PEDERSEN, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent,

Modern Linen & Laundry Service, Inc., Intervenor.

No. 273, Docket 23888.

United States Court of Appeals Second Circuit.

Argued March 14, 1956.

Decided June 7, 1956.

**418**

Emanuel Friedman, New York City (Sidney S. Grant, Grant & Angoff, Boston, Mass., of counsel on the brief), for petitioner.

Theophil C. Kammholz, Gen. Counsel, David P. Findling, Associate Gen. Counsel; Marcel Mallet-Prevost, Asst. Gen. Counsel, Arnold Ordman and Rose Mary Filipowicz, Attys., National Labor Relations Board, Washington, D. C., for respondent.

Myron P. Gordon, New York City, for intervenor.

Before FRANK, LUMBARD and WATERMAN, Circuit Judges.

LUMBARD, Circuit Judge.

Eugen Pedersen petitions this court to review and set aside an order of the National Labor Relations Board dismissing on jurisdictional grounds a complaint against Modern Linen & Laundry Service, Inc. Since that company is located in Rutland, Vermont we have jurisdiction under § 10(f), of the National Labor Relations Act, 29 U.S.C.A. § 160(f).

In November 1953 six employees of Modern were laid off or discharged. At that time United Stone and Allied Product Workers of America, CIO, was attempting to organize the non-supervisory employees of Modern, and on the Union's charge the Board's General Counsel filed a complaint alleging unfair labor practices in the discharge of the six employees. The hearing of the complaint commenced before a Trial Examiner on February 2, 1954. (Case No. 1–CA–1584.) Five days earlier Eugen Pedersen, one of Modern's supervisory employees since 1948, had given to a Board investigator a statement regarding the discharges and he was subpoenaed to testify on February 2.

Pedersen responded to the subpoena at the February 2 hearing and testified adversely to Modern and along the lines of his prior statements. On the following day Modern agreed to an informal settlement and the hearing was discontinued.

On February 15 Pedersen was discharged by Modern "without notice and without reason" and he promptly filed a charge on February 18 against Modern alleging an unfair labor practice under § 8(a) (4) of the National Labor Relations Act, 29 U.S.C.A. § 158(a) (4), which prohibits the discharge of an employee because "he has filed charges or given testimony under this Act." Thereupon on March 31 the Regional Director in Boston issued a complaint against Modern. Modern answered alleging as a defense that Pedersen was a supervisor, and it also urged that its business was a local enterprise and that the Board should therefore not take jurisdiction. Hearings were held at Rutland, Vermont, on April 28 and 29 before a Trial Examiner who reported on July 8, 1954 that Modern had discharged Pedersen "because he had given testimony under the Act on February 2, and for no other reason" and in order to discourage membership in the Union, and that these unfair labor practices in violation of § 8(a) (1) and (4) of the Act affected commerce within the meaning of the Act. He recommended Pedersen's immediate reinstatement and payment of lost wages.

While the Trial Examiner's report of July 8 was awaiting further action, the Board in October 1954 promulgated new

and stricter jurisdictional requirements.[1] Then on November 1, 1954, in still another proceeding which had been commenced in February by the Union for certification as the representative of Modern's employees, the Board decided that Modern's business outside the state of Vermont did not meet the new jurisdictional requirements.

Finally on December 10, 1954 the Board passed on the Trial Examiner's report regarding Pedersen's discharge and found that he had committed no prejuicial error and affirmed his rulings. It referred to its decision of November 1, 1954 and again found that Modern's operations were "insufficient to meet the Board's new jurisdictional standards" and that it would not effectuate the policies of the Act to assert jurisdiction over Modern, and accordingly it dismissed the complaint. 110 N.L.R.B. 1305. The Board gave no consideration to the merits of the case.

In May and again in July 1955 Pedersen moved for reconsideration and reopening the record to take new evidence, which the Board denied on September 23, 1955 with one of its members, Abe Murdock, dissenting. 114 N.L.R.B. No. 41.

 It is of course true that the Board has broad discretionary power to decline to consider cases within its statutory jurisdiction where it finds that such a course will best effectuate the policies of the Act. See e. g., N. L. R. B. v. Denver Building & Construction Trades Council, 1951, 341 U.S. 675, 684, 71 S.Ct. 943, 95 L.Ed. 1284. But the Board itself has recognized that its discretion is not unlimited. Breeding Transfer Company, 110 N.L.R.B. 493, 495 (1954). Where the Board acts arbitrarily or capriciously or where its action conflicts with a clear purpose of the statute, it has exceeded its authority. Thus the Board's retroactive assertion of jurisdiction over conduct previously considered to be outside its jurisdictional criteria has been held improper. N. L. R. B. v. Guy F. Atkinson Co., 9 Cir., 1952, 195 F.2d 141. Similarly, retroactive application of other Board policies has been held arbitrary and unlawful. N. L. R. B. v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers, etc., 8 Cir., 1955, 225 F.2d 343, 347–348. But cf. N. L. R. B. v. Gottfried Baking Co., Inc., 2 Cir., 1954, 210 F.2d 772, 781; Optical Workers' Union v. N. L. R. B., 5 Cir., 1955, 227 F.2d 687, rehearing denied, 5 Cir., 1956, 229 F.2d 170; Local Union No. 12, Progressive Mine Workers of America v. N. L. R. B., 7 Cir., 1951, 189 F.2d 1, certiorari denied, 1951, 342 U.S. 868, 72 S.Ct. 109, 96 L.Ed. 653. The rationale of these cases limiting the Board's power to act retroactively is that such retroactive action results in a species of entrapment. Persons who have relied on the Board's stated policy suddenly find themselves penalized for their conduct. In such a situation the unfairness and hardship to the individual penalized justify a requirement that the Board point to clear statutory authority for its action. These considerations apply with even greater force to the case now before us.

Here the act which resulted in petitioner's loss of employment was not *induced* by Board action; rather it was *compelled* by the Board. The Board subpoenaed Pedersen to testify; if he had not responded to the subpoena he might well have been compelled to testify by a court order issued under 29 U.S.C.A. § 161(2). The Board, having compelled him to give testimony contrary to the interests of his employer, now refuses to protect him from the employer's retaliation because it has decided that the activities of Modern Laundry Service do not sufficiently affect commerce to justify its attention. We agree with Member Murdock that the nature and extent of Modern's activities has now become ir-

1. The Board issued press releases in July 1954 about its jurisdictional standards, those regarding multi-state enterprises being first announced on July 15, 1954. Nineteenth Annual Report (1955) pp. 2–5.

relevant. In his dissenting opinion Mr. Murdock stated his position as follows:

"Having placed complainant in the position of opposing the interests of his employer, the Board cannot in good conscience leave him to the ungentle 'mercy' of that employer, merely because in the interim the Board has changed its jurisdictional policies so as to exclude the Respondent. To do so is to hold that complainant should have foreseen the change in jurisdictional policy, and having failed to foresee such change, must accept the consequences. Had he foreseen the change in jurisdictional policy, and accordingly refused to honor the Board's subpoena the Board, not itself gifted with such prescience, may well have brought proceedings against complainant to enforce its subpoena. To place complainant and other witnesses in such an impossible situation where they are compelled to aid the Board in effectuating the public interest but are denied protection against unlawful discharge after doing so is unjust and intolerable."

■ We agree that the Board's action here was "unjust and intolerable." Unless there is a clear Congressional mandate to the contrary the Board should be required to utilize every resource at its command to protect witnesses, such as Pedersen, who have been placed in jeopardy because the Board has required them to appear and give testimony.

An examination of the governing statute, far from revealing authorization for the Board's action, supports our conclusion that the Board has a duty to exercise its jurisdiction to protect Pedersen. By § 11 of the National Labor Relations Act, 29 U.S.C.A. § 161(1) Congress has given "the Board, or any member thereof" the power to issue subpoenas. By § 8(a) (4) of the Act, 29 U.S.C.A. § 158(a) (4) Congress has made it an unfair labor practice for an employer

"to discharge or otherwise discriminate against an employee be-

cause he has filed charges or given testimony under this subchapter."

■ ■ Congress has in the one section given the Board a power indispensable to the carrying out of its functions, and in the other provided a means whereby those affected by the exercise of that power can be protected. It is, we think, a permissible inference that Congress intended the protection to be as broad as the power. Thus we conclude that the protection afforded by § 8(a) (4) is coextensive with the power to subpoena and that the Board has no discretion to diminish that protection by declining to exercise jurisdiction because of its own shifting jurisdictional standards.

Nor are we persuaded that such a rule is an undue infringement on the Board's power to determine its own jurisdiction. It is true that the issuance of a complaint by the General Counsel does not prejudge the Board's jurisdiction of a case. The Board must still examine the question of its jurisdiction when the case comes before it. But there are, we think, some situations where the Board cannot refuse jurisdiction of a case without acting arbitrarily and capriciously. There is no inconsistency in saying that the action of the General Counsel in issuing a complaint and calling witnesses may produce such a case if a witness is subsequently discharged because of his testimony. Moreover, the General Counsel is not wholly disassociated from the Board in his function of issuing complaints. Section 3(d) of the Act, 29 U.S. C.A. § 153(d) provides that the General Counsel shall have authority to issue complaints "on behalf of the Board." And § 10(b), 29 U.S.C.A. § 160(b) provides:

"Whenever it is charged that any person has engaged in or is engaging in any such unfair labor practice, *the Board, or any agent or agency designated by the Board for such purposes,* shall have power to issue and cause to be served upon such person a complaint * * *." (Emphasis added.)

■ When the Board through its General Counsel issues a complaint and subpoenas witnesses, it becomes obligated under the Act to exercise its jurisdiction over complaints arising from the discharge of those witnesses for their testimony. It is true that such a requirement may add a few cases to the Board's already heavy load. But we think it not too burdensome to require the Board, in determining what matters it will handle, to consider the protection of the witnesses in a case an integral part of that case. It may limit the number of its cases by appropriate criteria; it may not, however, consider a matter without also asserting jurisdiction over the § 8 (a) (4) complaints which are incident to it.

The case must therefore be reversed and remanded to the Board for an early hearing on the merits.