NATIONAL LABOR RELATIONS BOARD *v.*
SCRIVENER, DBA AA ELECTRIC CO.

No. 70–267.  Argued January 12, 1972—Decided February 23, 1972

BLACKMUN, J., delivered the opinion for a unanimous Court.

*William Terry Bray* argued the cause for petitioner. With him on the brief were *Solicitor General Griswold, Peter G. Nash, Norton J. Come,* and *Paul J. Spielberg.*

*Donald W. Jones* argued the cause and filed a brief for respondent.

*William B. Barton* and *Harry J. Lambeth* filed a brief for Associated Builders & Contractors, Inc., as *amicus curiae.*

MR. JUSTICE BLACKMUN delivered the opinion of the Court.

Section 8 of the National Labor Relations Act, as amended, 61 Stat. 140, 29 U. S. C. § 158, provides:

"SEC. 8. (a) It shall be an unfair labor practice for an employer—

"(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 7;

.    .    .    .    .

"(4) to discharge or otherwise discriminate against an employee because he has filed charges or given testimony under this Act."

.         .         .              .              .

Section 7 of the Act, as amended, 61 Stat. 140, 29 U. S. C. § 157, provides:

"Sec. 7. Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection . . . ."

This case presents the issue whether an employer's retaliatory discharge of an employee who gave a written sworn statement to a National Labor Relations Board field examiner investigating an unfair labor practice charge filed against the employer, but who had not filed the charge or testified at a formal hearing on it, constitutes a violation of § 8 (a)(1) or of § 8 (a)(4) of the Act. The Board, with one member not participating, unanimously held that it was. 177 N. L. R. B. 504 (1969). The United States Court of Appeals for the Eighth Circuit, by a unanimous panel vote, held otherwise and denied enforcement. 435 F. 2d 1296 (1971). The Court of Appeals did not reach other issues raised by the employer. We granted certiorari in order to review a decision that appeared to have an important impact upon the administration of the Act. 404 U. S. 821 (1971).

I

There is testimony in the record, credited by the trial examiner and adopted by the Board, to the following effect:

The respondent Robert Scrivener is a small electrical contractor in Springfield, Missouri. He does business as

an individual proprietor under the name of AA Electric Company. On March 18, 1968, five of Scrivener's six employees signed cards authorizing a union[1] to represent them in collective bargaining. The next day business agent Moore advised Mr. Scrivener of the union's majority status and asked to negotiate a contract. Scrivener examined the cards, but refused the request.

Mr. Scrivener then visited his jobsites and complained to his employees about their action. On March 20 he dismissed card-signers Cockrum, Smith, and Wilson, and hired Hunt, a journeyman, and Statton, a helper. Hunt had worked for Scrivener on prior occasions.

On March 21 the union filed charges with the Board alleging that the company had violated §§ 8 (a)(1), (3), and (5) of the Act. On March 26 the three dischargees returned to work. The next day, however, Cockrum and Smith again were released on the ground that there was a lack of work. The two new employees and Perryman, the sole nonsigner among the six original employees, were retained. Smith was again recalled on April 1 and, with the other card-signers, except Cockrum, continued to work until April 18.

On April 17 a field examiner from the Board's regional office met with Mr. Scrivener and discussed the charges that had been filed. That evening the examiner interviewed the five card-signers at the union hall. He took affidavits or sworn statements from all except Cockrum who was not then working for Scrivener. On April 18 Scrivener inquired of at least two of the men whether they had met and been interviewed by the examiner the evening before. At the end of the day Scrivener dismissed the four who had given the statements; he did so with the explanation that he had no work for them to do.

---

[1] Local 453, International Brotherhood of Electrical Workers, AFL-CIO.

Perryman, Hunt, and Statton continued to work on the three houses and the 11-unit apartment building the company had under construction at the time.

On May 13 the union filed an amended charge adding the allegation that the dismissal of the four men on April 18 was because they had given the statements to the examiner in connection with the earlier charge, and that this was a violation of § 8 (a)(1) and § 8 (a)(4). Three of the men returned to work in May or early June. The fourth was never recalled.

A complaint was issued on both the original charge and the added allegation.

## II

The Board, in agreement with the trial examiner, concluded that the April 18 dismissal of the four employees was "in retaliation against them for having met with and given evidence to a Board field examiner investigating unfair labor practice charges which had been filed against" Scrivener; that "[t]he investigation of charges filed is an integral and essential stage of Board proceedings"; and that this conduct violated § 8 (a)(1) and § 8 (a)(4). 177 N. L. R. B., at 504. The customary order to cease and desist, to reinstate the four employees with back pay, and to post notices was issued. The Board concluded, however, in disagreement with the trial examiner and with one member dissenting, "that it will not effectuate the policies of the Act for the Board to assert jurisdiction herein over the alleged independent and unrelated violations of Section 8 (a)(1), (3), and (5) of the Act," and dismissed those portions of the complaint. *Id.*, at 504, 505.

The Court of Appeals, *per curiam,* relying on its earlier decision in *NLRB* v. *Ritchie Mfg. Co.,* 354 F. 2d 90 (CA8 1965), held that § 8 (a)(4) does not "encompass discharge of employees for giving written sworn statements to Board field examiners." In *Ritchie* the court had

stated, "We are reluctant to hold that § 8 (a)(4) can be extended to cover preliminary preparations for giving testimony." 354 F. 2d, at 101.[2] In the present case, the court refused to uphold the Board's finding that the challenged discharges violated § 8 (a)(1) as well as § 8 (a)(4) since "[t]o do so would be to overrule *Ritchie* implicitly, and we are not prepared to take that action." 435 F. 2d, at 1297.

### III

The view of the Court of Appeals is that § 8 (a)(4) of the Act serves to protect an employee against an employer's reprisal only for *filing* an unfair labor practice charge or for giving *testimony* at a formal hearing, and that it affords him no protection for otherwise participating in the investigative stage or, in particular, for giving an affidavit or sworn statement to the investigating field examiner.

We disagree for several reasons.

1. Construing § 8 (a)(4) to protect the employee during the investigative stages, as well as in connection with the filing of a formal charge or the giving of formal testimony, comports with the objective of that section. Mr. Justice Black, in no uncertain terms, spelled out the congressional purpose:

> "Congress has made it clear that it wishes all persons with information about such practices to be completely free from coercion against reporting them to the Board. This is shown by its adoption of § 8 (a)(4) which makes it an unfair labor practice for an employer to discriminate against an employee because he has filed charges. And it has been held that it is unlawful for an employer to seek to restrain an employee in the exercise of his right to file

---

[2] Apparently all the Ritchie employee did was "to prepare to testify." 354 F. 2d, at 101.

charges" (citations omitted). *Nash* v. *Florida Industrial Comm'n,* 389 U. S. 235, 238 (1967).

This complete freedom is necessary, it has been said, "to prevent the Board's channels of information from being dried up by employer intimidation of prospective complainants and witnesses." *John Hancock Mut. Life Ins. Co.* v. *NLRB,* 89 U. S. App. D. C. 261, 263, 191 F. 2d 483, 485 (1951). It is also consistent with the fact that the Board does not initiate its own proceedings; implementation is dependent "upon the initiative of individual persons." *Nash* v. *Florida Industrial Comm'n, supra,* 389 U. S., at 238; *NLRB* v. *Industrial Union of Marine & Shipbuilding Workers,* 391 U. S. 418, 424 (1968).

2. The Act's reference in § 8 (a)(4) to an employee who "has filed charges or given testimony," could be read strictly and confined in its reach to formal charges and formal testimony. It can also be read more broadly. On textual analysis alone, the presence of the preceding words "to discharge or otherwise discriminate" reveals, we think, particularly by the word "otherwise," an intent on the part of Congress to afford broad rather than narrow protection to the employee. This would be consistent with § 8 (a)(4)'s purpose and objective hereinabove described. A similar question with respect to the word "evidence" in §§ 11 (1) and (2) of the Act, 29 U. S. C. §§ 161 (1) and (2), was considered in *NLRB* v. *Wyman-Gordon Co.,* 394 U. S. 759, 768–769 (1969), and was resolved by a broad and not a narrow construction.[3] That precedent is pertinent here.

3. This broad interpretation of § 8 (a)(4) accords with the Labor Board's view entertained for more than 35 years. Section 8 (a)(4) had its origin in the Na-

---

[3] The three Justices who concurred in the result joined Part III of the plurality opinion. 394 U. S., at 769.

tional Industrial Recovery Act, 48 Stat. 195. Executive Order No. 6711, issued May 15, 1934, under that Act (10 NRA Codes of Fair Competition 949), provided, "No employer . . . shall dismiss or demote any employee for making a complaint or giving evidence with respect to an alleged violation . . . ." The first Labor Board interpreted that phrase to protect the employee not only as to formal testimony, but also as to the giving of information relating to violations of the NIRA. *New York Rapid Transit Corp.*, 1 N. L. R. B. Dec. 192 (1934) (affidavits); *Ralph A. Freundlich, Inc.*, 2 N. L. R. B. Dec. 147, 148 (1935) (state court testimony). In § 8 (a)(4) the word "testimony," rather than "evidence," appears. But the new language was described as "merely a re-iteration" of the Executive Order language and it was stated that the "need for this provision is attested" by the above-cited Board decisions. Comparison of S. 2926 (73d Cong.) and S. 1958 (74th Cong.), Senate Committee Print 29, 1 Leg. Hist. of National Labor Relations Act 1319, 1355 (1949).[4]

4. This interpretation, in our view, also squares with the practicalities of appropriate agency action. An employee who participates in a Board investigation may not be called formally to testify or may be discharged before any hearing at which he could testify. His contribution might be merely cumulative or the case may be settled or dismissed before hearing. Which em-

---

[4] We do not regard three Board cases, *Albert J. Bartson,* 23 N. L. R. B. 666, 673–674 (1940); *F. W. Poe Mfg. Co.,* 27 N. L. R. B. 1257, 1270 (1940); and *The Kramer Co.,* 29 N. L. R. B. 921, 935 (1941), cited by the *amicus,* as indicative of a contrary Board interpretation. In each of those cases the employee had filed a charge. The Board's reference, in each opinion, to that fact and its further reference, in the last two cases, to the "express statutory protection afforded employees" by § 8 (a)(4), are expected and natural references and do not, in our view, indicate a narrow approach to the statute.

ployees receive statutory protection should not turn on the vagaries of the selection process or on other events that have no relation to the need for protection. It would make less than complete sense to protect the employee because he participates in the formal inception of the process (by filing a charge) or in the final, formal presentation, but not to protect his participation in the important developmental stages that fall between these two points in time. This would be unequal and inconsistent protection and is not the protection needed to preserve the integrity of the Board process in its entirety.[5]

5. The Board's subpoena power also supports this interpretation. Section 11 of the Act, 29 U. S. C. § 161, gives the Board this power for "the purpose of all hearings and investigations." Once an employee has been subpoenaed he should be protected from retaliatory action regardless of whether he has filed a charge or has actually testified. Judge Lumbard pertinently described it:

> "It is, we think, a permissible inference that Congress intended the protection to be as broad as the [subpoena] power." *Pedersen* v. *NLRB,* 234 F. 2d 417, 420 (CA2 1956).

Under this reasoning, if employees of Scrivener had been subpoenaed, they would have been protected. There is no basis for denying similar protection to the voluntary participant.

6. The approach to § 8 (a)(4) generally has been a liberal one in order fully to effectuate the section's remedial purpose. In *M & S Steel Co.* v. *NLRB,* 353 F. 2d 80 (CA5 1965), the court sustained the Board's

---

[5] We are not persuaded that the reach of § 8 (a)(3), 29 U. S. C. § 158 (a)(3), and the criminal penalty provided by § 12, 29 U. S. C. § 162, provide the required protection that justifies a narrow reading of § 8 (a)(4).

finding, 148 N. L. R. B. 789, 792–795 (1964), that § 8 (a)
(4) was violated by the discharge of an employee, Wil-
liams, because he gave a statement to a field examiner.
In *NLRB* v. *Dal-Tex Optical Co.,* 310 F. 2d 58, 60–61
(CA5 1962), the court sustained the Board, 131
N. L. R. B. 715, 721 (1961), in affording protection to an
employee, Whitaker, who appeared but did not testify at
a Board hearing. See *John Hancock Mut. Life Ins.
Co.* v. *NLRB, supra,* and *NLRB* v. *Syracuse Stamping
Co.,* 208 F. 2d 77, 79–80 (CA2 1953).[6]

We are aware of no substantial countervailing con-
siderations. We therefore conclude that an employer's
discharge of an employee because the employee gave a
written sworn statement to a Board field examiner in-
vestigating an unfair labor practice charge filed against
the employer constitutes a violation of § 8 (a)(4) of
the National Labor Relations Act.

Having reached this conclusion, it is unnecessary for
us to determine whether the employer's action is also
a violation of § 8 (a)(1), and we expressly refrain from
so doing.

## IV

A final comment about the jurisdictional aspects of
the case is perhaps in order. The Board found that
Scrivener's operations were too small to satisfy the
Board's self-imposed and published $50,000 outflow-
inflow jurisdictional standard for non-retail enterprises.
See *Siemons Mailing Service,* 122 N. L. R. B. 81, 85
(1958). It also found, however, that Scrivener's opera-
tions were sufficient to "have an impact on and affect
interstate commerce," 177 N. L. R. B., at 504, and thus
were within the Board's statutory jurisdiction as de-
fined by § 10 (a) of the Act, 29 U. S. C. § 160 (a).

---

[6] But cf. *Hoover Design Corp.* v. *NLRB,* 402 F. 2d 987 (CA6
1968) (employee who "threatened to go to the Board" or file charges).

This prompted the Board to assert jurisdiction over the §§ 8 (a)(1) and (4) claim of retaliation, but to refuse to exercise jurisdiction over the original §§ 8 (a)(1), (3), and (5) claims on the ground that the latter would have "no immediate impact on the vindication of the right of an individual to resort to the Board's processes . . . ." 177 N. L. R. B., at 505. Scrivener, as a consequence, complains that relief for him against a claimed unfair labor practice on the part of the union is unavailable.

The employer's complaint of jurisdictional unfairness is understandable. See, however, *Pedersen* v. *NLRB, supra*, 234 F. 2d 417. As we read the opinion of the Court of Appeals, this issue and that of the sufficiency of the evidence, and perhaps others, were not reached when that court decided the § 8 (a)(4) issue as it did. We note that that court described the Board's jurisdiction to act as "marginal." 435 F. 2d, at 1296. In any event, this and any other issues may be canvassed on remand.

The judgment of the Court of Appeals is reversed and the case is remanded for further proceedings.

*It is so ordered.*