**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**JACK La LANNE MANAGEMENT CORP., Respondent.**

No. 834, Docket 75–4205.

United States Court of Appeals, Second Circuit.

Argued May 13, 1976.

Decided July 27, 1976.

Lawrence M. Monat, New York City (Miller & Seeger, New York City, of counsel), for respondent.

John D. Burgoyne, Atty., N. L. R. B., Washington, D. C. (John S. Irving, Jr., Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, Eric Moskowitz, Atty., N. L. R. B., Washington, D. C., of counsel), for petitioner.

Before SMITH, MANSFIELD and VAN GRAAFEILAND, Circuit Judges.

MANSFIELD, Circuit Judge:

Pursuant to § 10(e) of the National Labor Relations Act ("Act"), 29 U.S.C. § 160(e), the National Labor Relations Board ("NLRB") petitions for enforcement of its order dated June 26, 1975, finding Jack La Lanne Management Company ("Company") in violation of §§ 8(a)(4), (3), & (1) of the Act, 29 U.S.C. §§ 158(a)(4), (3), & (1), and requiring the Company (1) to cease and desist interfering with or restraining its employees in their exercise of rights under § 7 of the Act, 29 U.S.C. § 157, (2) to offer employee Paulette Anderson reinstatement with any earnings lost by reason of her discharge, (3) to "make whole" employees Anderson and Richard Kaufman for loss of earnings incurred as a result of reductions in their working hours, (4) to make available to the Board relevant Company records for the calculation of back pay damages, and (5) to post the usual notices in all 10 Company health spas in the New York City area. Enforcement is granted.

The Company operates 10 health spas in the New York City area. In 1973 Local 966 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America began an organizing campaign among the Company's employees. Kaufman and Anderson played active roles in the organizing drive. Although the employees ultimately voted against union representation in December 1973, the Company's opposition to unionization led to charges of unfair labor practices and a finding on June 3, 1974, by the Board of a § 8(a)(1) violation on the part of Company officials. Testifying against the Company at the Board's hearing were Anderson, Kaufman, and employee Debra Caron.

On May 24, 1974, the Board filed new charges of unfair labor practices against the Company growing out of allegations that shortly after they testified in the § 8(a)(1) hearing, the three employees suffered reprisals at the hands of Company officials. The Administrative Law Judge found that amid Company warnings to other employees that Caron, Anderson, and Kaufman had "bad attitudes" and were not to be associated with, the disfavored employees received a series of adverse work assignments. Among the most serious violations found were that Kaufman's work week had been unlawfully reduced from 25 to 9½ per week, that Anderson and Caron were assigned extra cleaning and instruction duties, and that, following Anderson's refusal to accept a transfer to another spa (a transfer previously declined by other employees with even less seniority) the Company terminated her employment outright on March 25, 1974. These findings, which were adopted by the entire Board with only slight modifications, are vigorously challenged by the Company.

Under § 8(a)(4) of the Act, 29 U.S.C. § 158(a)(4), it is an unfair labor practice for an employer to take reprisals against an employee for offering testimony to the Board. See *NLRB v. Scrivener*, 405 U.S. 117, 121–25, 92 S.Ct. 798, 31 L.Ed.2d 79 (1972); *NLRB v. J. P. Stevens & Co.*, 464 F.2d 1326 (2d Cir. 1972), *cert. denied*, 410 U.S. 926, 93 S.Ct. 1357, 35 L.Ed.2d 587 (1973). Furthermore, §§ 8(a)(1) and (3) prohibit discrimination against an employee where it is motivated by anti-union sentiments. We will not reject the Board's findings concerning the existence of such anti-union motivation and the credibility of relevant witnesses unless they are unsupported by substantial evidence. *NLRB v. Walton Mfg. Co.*, 369 U.S. 404, 405, 82 S.Ct. 853, 7 L.Ed.2d 829 (1962); *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

Here there was ample evidence that the Company acted in retaliation for the employee's furnishing of testimony to the Board and that its action was prompted by its anti-union attitude. The prior history of unfair labor practices on the part of the employer, *NLRB v. Stowe Spinning Co.*, 336 U.S. 226, 231, 69 S.Ct. 541, 93 L.Ed. 638 (1949), the statements by Company officials in condemnation of the pro-union employees, *NLRB v. Revere Metal Art Co.*, 287 F.2d 632, 633 (2d Cir. 1961), and the series of adverse employment decisions affecting Anderson, Kaufman and Caron (including, e. g., assignments of increased cleaning jobs and teaching work to Anderson and Caron, followed by a substantial reduction in the hours for which Anderson and Kaufman were compensated even though the instructional staff was simultaneously being increased, Anderson and Kaufman were available, and Kaufman was liked by patrons; efforts to keep other employees from associating with Anderson and Caron; the discharge of Anderson for refusing to transfer to the Company's Madison spa; and an effort to fabricate an infraction of Company rules on the part of Caron), all support the Board's findings of anti-union animus motivating the Company's policies. While conflicting interpretations might be drawn from some of the evidence, the Board's conclusions plainly rest on substantial evidence.

The Company raises two other objections to enforcement of the Board's order, neither of which we find persuasive. First, it argues that whereas the original

unfair labor charge pertained solely to Anderson's treatment by Company officials, the complaint later was amended to encompass additional charges, particularly those relating to Kaufman, in violation of § 10(b) of the Act, 29 U.S.C. § 160(b).[1] These additional allegations, however, which are all concerned with similar unfair labor practices designed to further the Company's common objective of punishing workers for favoring union representation, represent "closely related" parallel conduct toward other employees, *NLRB v. Dinion Coil Co.,* 201 F.2d 484, 491 (2d Cir. 1952), and constitute "the same class of violations as those set up in the charge. . . .," *NLRB v. Fant Milling Co.,* 360 U.S. 301, 307–08, 79 S.Ct. 1179, 1183, 3 L.Ed.2d 1243 (1959); *National Licorice Co. v. NLRB,* 309 U.S. 350, 369, 60 S.Ct. 569, 84 L.Ed. 799 (1940). Consequently, it was proper for the Board to expand its inquiry to take the added allegations into account.

 Respondent further argues that, assuming it violated the Act, the relief ordered by the Board is overly broad, going beyond what is necessary to correct the employer's unlawful conduct. We disagree. The Board is afforded wide latitude in fashioning relief, and its order, which is designed to protect the employees' § 7 rights at all of the employer's health spas within the confines of New York City, is justified by the repetitive nature of the Company's misconduct, *NLRB v. Stowe Spinning Co., supra,* and the transferability of affected workers from spa to spa, cf. *J. P. Stevens & Co. v. NLRB,* 380 F.2d 292, 304 (2d Cir.), *cert. denied,* 389 U.S. 1005, 88 S.Ct. 564, 19 L.Ed.2d 600 (1967).

We have examined respondent's other arguments and find them to be without merit.

Enforcement of the Board's order is granted.

---

1. In pertinent part, § 10(b) provides that "no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board . . . ." However, since the section also guarantees that "[a]ny such complaint may be amended by the member, agent, or agency conducting the hearing of the Board in its discretion at any time prior to the issuance of an order based thereon," we have long permitted the Board to amend the complaint and to add charges after the six-month limitation period has expired if such additions are "closely related" to the original charge. *NLRB v. Dinion Coil Co.,* 201 F.2d 484, 491 (2d Cir. 1952); *NLRB v. Gaynor News Co.,* 197 F.2d 719, 721–22 (2d Cir. 1952), *aff'd,* 347 U.S. 17, 74 S.Ct. 323, 98 L.Ed. 455 (1954).