**Raymond J. DONOVAN, Secretary, United States Department of Labor, Plaintiff-Appellant,**

v.

**SQUARE D COMPANY, Defendant-Appellee.**

No. 82–1227.

United States Court of Appeals, Fifth Circuit.

July 11, 1983.

---

Mary-Helen Mautner, Elaine Kaplan, Kerry L. Adams, Washington, D.C., for plaintiff-appellant.

W. Randolph Elliott, Dallas, Tex., Stanley S. Jaspan, Dale R. Vlasek, Milwaukee, Wis., for defendant-appellee.

Before RUBIN, GARZA and WILLIAMS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge.

On August 7, 1978, Dorothy Fugitt was terminated by her employer, Square D Company. Fugitt filed a complaint with the Secretary of Labor, alleging that her discharge had been in retaliation for safety related activities [1] and in violation of Section 11(c) of the Occupational Safety and Health Act of 1970 (OSHA), 29 U.S.C. § 660(c).[2] After investigation, the Department of Labor determined that the company acted unlawfully. Thereafter, OSHA investigatory personnel met with the company and requested that Fugitt be reinstated to her former position. The company refused. No further action was taken until more than two years later when the Secretary of Labor filed this action in the district court pursuant to Section 11(c)(2) of OSHA, 29 U.S.C. § 660(c)(2),[3] seeking reinstate-

1. Ms. Fugitt began working for Square D in December 1975. In May 1977, she lost the ends of her fingers in an accident allegedly resulting from the malfunctioning of a company machine. After returning to work in February 1978, she allegedly was concerned with various hazards to which company employees were exposed. In June 1978, OSHA inspected the Square D premises; Fugitt contends that her supervisor directed employees to clean things up in preparation for the OSHA inspection.

On August 7, Ms. Fugitt took photographs of various hazards she believed to be presented by the plant machinery with the intention of forwarding these photographs to OSHA. She was informed by the company that there was a rule against photographing equipment, purportedly to protect trade secrets. When Fugitt refused to turn over her film, she was discharged.

2. Section 11(c)(1) provides:

(c)(1) No person shall discharge or in any manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted

any proceeding under or related to this chapter or has testified or is about to testify in any such proceeding or because of the exercise by such employee on behalf of himself or others of any right afforded by this chapter. 29 U.S.C. § 660(c)(1). This section protects employees from discharge or other retaliation based upon the exercise of their rights granted by the Act. In Ms. Fugitt's case, the Secretary alleged retaliation for the exercise of rights under § 8(e) and (f) of the Act, 29 U.S.C. § 657(e), (f). This section generally provides that employees may consult OSHA representatives concerning matters of health and safety in the workplace, 29 U.S.C. § 657(e), may request an inspection if they believe a violation exists, 29 U.S.C. § 657(f)(1), and may inform inspectors of any violation of the Act which they have reason to believe exists, 29 U.S.C. § 657(f)(2).

3. The statute permits any employee who believes himself to be a victim of retaliation to file a complaint with the Secretary of Labor within 30 days. 29 U.S.C. § 660(c)(2). The Secretary then has 90 days in which to investigate the complaint, and notify the complainant of his

ment for Fugitt with back pay, as well as injunctive relief against future violations of Section 11(c).

On motion for summary judgment, the district court dismissed the action as barred by the two-year Texas statute of limitations for actions in tort. Tex.Rev.Stat.Ann. art. 5526 (Vernon Supp.1982–83). The Secretary appealed, arguing that state statutes of limitations were inapplicable to suits under OSHA brought by the Secretary to vindicate public rights and to implement national policy. The issue is one of first impression in this Court.[4] We find that the state limitations statute is not applicable, and we remand the case to the district court for consideration on the merits.

OSHA does not state a limitations period for actions brought under Section 11(c). In the absence of federally-prescribed limitations periods, the courts have frequently inferred that Congress intended to "borrow" the most analogous state statutes of limitations. *See e.g., Board of Regents v. Tomanio,* 446 U.S. 478, 483–84, 100 S.Ct. 1790, 1794–95, 64 L.Ed.2d 440 (1980); *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975); *UAW v. Hoosier Cardinal Corp.,* 383 U.S. 696, 704, 86 S.Ct. 1107, 1112, 16 L.Ed.2d 192 (1966); *O'Sullivan v. Felix,* 233 U.S. 318, 322, 34 S.Ct. 596, 597, 58 L.Ed. 980 (1914). This inference, however, may not appropriately be drawn in every case. For example, state statutes are not applied where suit is brought by the government to vindicate a public right, absent a clear showing of congressional intent

to the contrary. *See, e.g., United States v. Summerlin,* 310 U.S. 414, 416, 60 S.Ct. 1019, 1020, 84 L.Ed. 1283 (1940); *Nabors v. NLRB,* 323 F.2d 686, 688–89 (5th Cir.1963), *cert. denied,* 376 U.S. 911, 84 S.Ct. 666, 11 L.Ed.2d 609 (1964). *See also Reeves v. International Telephone and Telegraph Corp.,* 616 F.2d 1342, 1350 (5th Cir.1980), *cert. denied,* 449 U.S. 1077, 101 S.Ct. 857, 66 L.Ed.2d 800 (1981). Similarly, state limitations periods will not be borrowed if their application would "frustrate or interfere with the implementation of national policies." *Occidental Life Insurance Co. v. EEOC,* 432 U.S. 355, 367, 97 S.Ct. 2447, 2455, 53 L.Ed.2d 402 (1977). *See Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 465, 95 S.Ct. 1716, 1722, 44 L.Ed.2d 295 (1975); *UAW v. Hoosier Cardinal Corp.,* 383 U.S. 696, 701, 86 S.Ct. 1107, 1110, 16 L.Ed.2d 192 (1966). Thus it has been held that suits brought by the EEOC under Title VII of the Civil Rights Act of 1964[5] and by the NLRB in enforcing the National Labor Relations Act[6] are not subject to state limitations periods. We conclude that OSHA suits brought by the Secretary of Labor under Section 11(c) similarly may not be barred by state statutes of limitations.

OSHA was enacted "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions and to preserve our human resources." 29 U.S.C. § 651(b). Towards this public goal, the statute envisions mandatory safety standards and establishes reporting, investigating and enforcement procedures to guarantee such standards are met. Sec-

determination. 29 U.S.C. § 660(c)(3). The parties do not dispute that these limitations periods were met.

If a violation is found, the statute empowers the Secretary to bring an action in an appropriate United States District Court, for "all appropriate relief including rehiring or reinstatement of the employee to his former position with back pay." 29 U.S.C. § 660(c)(2). OSHA does not specify any time in which suit must be brought. In the immediate case, suit was not brought for over two years after the Secretary's determination. The record does not disclose the reason for that delay. On appeal, the Secretary offered the Department's backlog of cases in explanation.

4. The Tenth Circuit, in *Marshall v. Intermountain Electric Co.,* 614 F.2d 260 (10th Cir.1980), was presented with this issue and held that state limitations periods did not apply to governmental suit under OSHA § 11(c).

5. 42 U.S.C. § 2000e–5. *See Occidental Life Insurance Co. v. EEOC,* 432 U.S. 355, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977).

6. 29 U.S.C. § 160(c). *See Nabors v. NLRB,* 323 F.2d 686 (5th Cir.1963), *cert. denied,* 376 U.S. 911, 84 S.Ct. 666, 11 L.Ed.2d 609 (1964).

tion 11(c) operates in tandem with these provisions. It encourages employee reporting of OSHA violations and cooperation in agency investigative efforts without fear of employer retaliation.

As stated by the Supreme Court in the context of the Fair Labor Standards Act's (FSLA) anti-discrimination provision, "effective enforcement could ... only be expected if employees [feel] free to approach officials with their grievances." *Mitchell v. Robert De Mario Jewelry, Inc.*, 361 U.S. 288, 292, 80 S.Ct. 332, 335, 4 L.Ed.2d 323 (1960). Similarly, as the Court noted with respect to the National Labor Relations Act (NLRA), freedom from retaliation is necessary " 'to prevent the Board's channels of information from being dried up by employer intimidation of prospective complainants and witnesses.' " *NLRB v. Scrivener*, 405 U.S. 117, 122, 92 S.Ct. 798, 801, 31 L.Ed.2d 79 (1972) (quoting *John Hancock Mutual Life Insurance Co. v. NLRB*, 191 F.2d 483, 485 (D.C.Cir.1951)). Thus, in the case of OSHA, like that of the FLSA and NLRA, the long-term effect and primary purpose of anti-retaliation suits is to promote effective enforcement of the statute by protecting employee communication with federal authorities.[7]

OSHA Section 11(c) provides for individual relief such as reinstatement with back pay. While remedial, this provision operates primarily toward furthering the public statutory goals. "The fact that these proceedings operate to confer an incidental benefit on private persons does not detract from this public purpose." *Nabors v. NLRB, supra*, 323 F.2d at 688–89 (addressing the NLRB's enforcement proceedings, which provide back pay awards).[8]

The public nature of these individual remedies is emphasized by the fact that the government alone possesses the right to bring suit under Section 11(c). A private

---

[7] The Act's legislative history indicates that employee reporting of violations was meant to play an essential role in OSHA's scheme because government inspectors alone could never adequately police the millions of workplaces covered by the statute. *See, e.g.,* Committee Print, Legislative History of the Occupational Safety and Health Act of 1970, 92d Cong., 1st Sess. 152, 1032–33 (June 1971).

OSHA covers over 2.5 million establishments. In 1979 and 1980, the federal government employed only 1581 compliance and safety officers, creating a situation where approximately two percent of the covered firms could be inspected in any one year. *See* The President's Report on Occupational Safety and Health for 1980, at p. 42 (Aug. 1981).

[8] In *Occidental Life Insurance Co. v. EEOC,* 432 U.S. 355, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977), the EEOC had brought an action seeking reinstatement and back pay for an employee allegedly discharged in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5, as well as for injunctive relief against further violations of the Act. Title VII, like OSHA, does not contain a statute of limitations for such suits. The Supreme Court was presented with the question of whether Congress intended that state statutes of limitations be applied. The Court concluded that they should not, primarily on the ground that their application "would be inconsistent with the underlying policies of the federal statute." 432 U.S. at 367, 97 S.Ct. at 2455.

The Court also emphasized, in reaching its holding, that the suit brought by the EEOC served to vindicate federal as well as individual interests: "the EEOC does not function simply as a vehicle for conducting litigation on behalf of private parties." 432 U.S. at 368, 97 S.Ct. at 2455. Thus, contrary to appellee's argument, we do not read *Occidental* to foreclose the public purpose/private purpose analysis relied upon in part in reaching our conclusion, and drawn from our prior decisions in *Reeves v. International Telephone & Telegraph Corp.,* 616 F.2d 1342, 1350 (5th Cir.1980), *cert. denied,* 449 U.S. 1077, 101 S.Ct. 857, 66 L.Ed.2d 800 (1981); *Nabors v. NLRB, supra,* 323 F.2d at 688–89. Rather, as in any case of statutory interpretation, various indicia may be relevant to an analysis of congressional intent. Depending upon the specific statute at issue and the salience of the interpretative guidelines, resolution of congressional intent may turn on any number of factors. Thus, from the Supreme Court's emphasis on the inconsistency of state limitations periods with federal Title VII policy we cannot infer that a similar exclusive reliance need be placed in analyzing different statutes where other indicia of congressional intent are obvious. Furthermore, given the Court's recognition of the public nature of the EEOC's pursuit of private remedies in *Occidental,* we find no merit to appellee's contention that *Occidental* invalidates such an analysis. *Accord Marshall v. Intermountain Electric Co.,* 614 F.2d 260 (10th Cir.1980).

cause of action does not exist.[9] This governmental vindication of the public interest in suits under Section 11(c) of OSHA militates against an inference that congressional failure to specify a limitations period signals an adoption of state statutes of limitations.

This conclusion is further supported by the fact that Congress did specify time limitations for other procedural steps covered by Section 11(c). Section 11(c) explicitly provides a thirty-day limitations period in which an aggrieved individual may file a complaint with the Secretary, followed by a ninety-day period in which the Secretary must render his determination. 29 U.S.C. § 660(c)(2), (3). This expressed concern for prompt action at the initial complaint and investigation stages stands in marked contrast to the lack of any time limitation upon a suit brought after a determination that a violation has occurred. By adopting these contrasting provisions within the same statutory section we must conclude that Congress intended that there be prompt initial action followed by a flexible period in which to bring suit. The most reasonable inference to draw is that Congress desired expeditious action at the outset of proceedings to preserve the parties' interests, yet in recognition of both the need for agency flexibility and the reality of administrative backlog, Congress elected to forego placing an inflexible timetable upon the Secretary for bringing suit.[10] Neither appellee nor our own research discloses any evidence of contrary intent.

Appellee argues that this open-ended period for suit could not have been intended, as OSHA defendants would thereby be subject to the unreasonable surprise and prejudice which can result from the prosecution of stale claims. We disagree with appellee's contention in part because of safeguards contained in the statute. Section 11(c)(2) grants the district courts jurisdiction to order "all appropriate relief" in each

9. To date, none of the Circuits have implied a private right of action, and one Circuit has expressly held that no private action may be maintained. *See Taylor v. Brighton Corp.,* 616 F.2d 256 (6th Cir.1980). This question is not before us on appeal, and we note only that no express private right of action appears within OSHA's statutory scheme.

Appellee argues that the availability of a writ of mandamus to compel agency action affords, in effect, a private right of action under OSHA. Therefore, appellee contends, the policies underlying the application of limitations periods to suits by private parties come into play, as does the inference that Congress intended in its silence to "borrow" state statutes of limitations. We find no merit to this argument. The remedy of mandamus is a drastic one, invoked only in extraordinary situations. Given this nature of the writ and its unlikely use to compel agency action, we do not find it to be a substitute for private suit as appellee contends. Thus we reject the inference appellee would have us draw that Congress intended state limitations periods to apply because mandamus might lie in rare and unusual situations. *See Nabors v. NLRB, supra,* 323 F.2d at 689.

10. This dichotomous treatment, as well as the inference we draw therefrom, is analogous to that accorded Title VII claims as analyzed by the Supreme Court in *Occidental Life Insurance Co. v. EEOC,* 432 U.S. 355, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977). There the Supreme Court found:

Congress did express concern for the need of time limitations in the fair operation of the Act, but that concern was directed entirely to the initial filing of a charge with the EEOC and prompt notification thereafter to the alleged violator. . . .

The fact that the only statute of limitations discussions in Congress were directed to the period preceding the filing of an initial charge is wholly consistent with the Act's overall enforcement structure—a sequential series of steps beginning with the filing of a charge with the EEOC. Within this procedural framework, the benchmark, for purposes of a statute of limitations, is not the last phase of the multistage scheme, but the commencement of the proceeding before the administrative body.

432 U.S. at 371–72, 97 S.Ct. at 2457.

While Section 11(c) does not expressly require prompt notification of any employer when a complaint is filed, in contrast to the Title VII procedure considered in *Occidental,* as a practical matter the Secretary routinely contacts the employer during the 90-day investigative period, during which company management is interviewed. The company is therefore alerted to possible litigation and given an early opportunity to gather and preserve evidence. Here, for example, the company was on notice of the investigation within one month after Ms. Fugitt filed her complaint and was met with an agency request, two months thereafter, for Ms. Fugitt's reinstatement.

anti-retaliation case, including reinstatement with back pay. This discretionary power requires the courts " 'to locate "a just result" in light of the circumstances peculiar to the case.' " *Occidental Life Insurance Co. v. EEOC,* 432 U.S. 355, 373, 97 S.Ct. 2447, 2458, 53 L.Ed.2d 402 (1977) (quoting *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 424–25, 95 S.Ct. 2362, 2374–75, 45 L.Ed.2d 280 (1975)). If cases should arise in which an inordinate and inexcusable delay results in prejudice to a defendant's ability to present his defense, the district courts may restrict or even deny back pay relief.[11] *Ibid. Accord Marshall v. Intermountain Electric Co.,* 614 F.2d 260, 263 n. 8 (10th Cir.1980).

Finally, the most persuasive consideration of all. We find that application of the diverse state statutes of limitations to OSHA anti-retaliation suits would "frustrate" or "interfere with" national policy. This conclusion strongly negates any inference that their application was intended by Congress. *Occidental Life Insurance Co. v. EEOC,* 432 U.S. 355, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977). As the Supreme Court cautioned in *Occidental,* "[s]tate legislatures do not devise their limitations periods with national interests in mind, and it is the duty of the federal courts to assure that importation of state law will not frustrate or interfere with the implementation of national policies." 432 U.S. at 367, 97 S.Ct. at 2455.

Were state limitations periods applicable, suits by the Secretary of Labor would be governed by different and, in some cases, uncertain time limitations. Relatively short limitations periods of a year or two, as in the immediate case, might operate to bar suit in some states. In other states lengthier limitations periods, *e.g.,* six years, might apply. If these diverse periods were applicable, the Secretary might be compelled to shift enforcement activities disproportionately among the states. This could lead to concentrating all immediate activity to those states with short limitations periods, occasioning lengthy periods of delay in those states with longer limitations periods. If consistent enforcement in all states is undertaken to avoid this disparate treatment, timely suit in many cases in the states with short limitations periods would be impractical. Enforcement of the federal law under the pressure of either alternative would be diverted from the course it would otherwise follow were national policy alone properly considered. We find no justification to conclude that Congress intended OSHA enforcement activity to be shaped by state laws, borne in the context of diverse private party litigation.

Moreover, application of a "most analagous state limitations period" would inject an area of uncertainty in enforcement activity which would frustrate national safety policy. The internally diverse state limitations periods would need to be scrutinized in an effort to determine the most closely analogous state subject matter to OSHA anti-retaliation suits. Uncertainty over the most analogous statute in each of the fifty states could well result. In turn, the ensuing litigation would divert national enforcement efforts away from their statutory goals. Once again, we find no indication that Congress intended national policy to be affected in this way by application of state law.

As in the case of the EEOC in *Occidental Life Insurance Co. v. EEOC,* 432 U.S. 355, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977), the statutory constraints upon agency action under OSHA make it unreasonable to infer that Congress intended to "consign its federal lawsuits to the vagaries of diverse state limitations statutes, some as short as one year." 432 U.S. at 370–71, 97 S.Ct. at 2457. In *Occidental,* the Supreme Court emphasized in rejecting the adoption of state limitations periods in Title VII ac-

11. In determining the effects of delayed prosecution upon a defendant, the district courts may consider whether the company was on notice that a violation had been determined and that prosecution was intended. *See* note 10 *supra.* Depending upon the length of the de-lay, and the peculiar circumstances of the individual case, the availability of such notice might properly afford a defendant sufficient opportunity to gather and preserve evidence in anticipation of court action.

tions, "[u]nlike the typical litigant against whom a statute of limitations might appropriately run, the EEOC is required by law to refrain from commencing a civil action until it has discharged its administrative duties." 432 U.S. at 368, 97 S.Ct. at 2455. The Secretary under OSHA is not obligated to try to negotiate settlement, as is the EEOC. But as a practical matter the Secretary often attempts settlement in order to avoid costly and time consuming litigation. Thus, like the EEOC, the Secretary attempts to "settl[e] disputes, if possible, in an informal, noncoercive fashion." 432 U.S. at 368, 97 S.Ct. at 2455.[12] Were state limitations periods to run against the Secretary's action, settlement efforts prior to suit might well be foreclosed.

Further constraining the Secretary's action, like that of the EEOC, is an enormous backlog of enforcement cases.[13] This backlog would make it difficult, if not impossible, for the Secretary to fulfill his statutory obligations to investigate and render decisions within the strict time limits specified in Section 11(c),[14] and simultaneously to bring suit under Section 11(c) within the various inflexible time periods established by the states for their private litigants.

We thus conclude that application of state limitations periods to OSHA Section 11(c) suits would frustrate the implementation of national safety policy. This specific conclusion, considered along with the well-reasoned general principle that governmental suits vindicating public interests are not barred by state limitations periods, leads us to find that Congress did not intend in its silence to subject OSHA Section 11(c) anti-retaliation suits to the vagaries of state limitations law.[15]

### CONCLUSION

The district court erred in dismissing the suit as time-barred by the two-year Texas tort limitations period. Accordingly, we reverse and remand for consideration on the merits.

REVERSED AND REMANDED.

---

**12.** In accordance with the general national policy favoring voluntary resolution of disputes, the Secretary as a policy matter regularly attempts to dispose of disputes without resort to the courts where to do so would be in the best interests of the employee and the public. *See* The President's Report on Occupational Safety and Health for 1980, at pp. 42–53 (Aug. 1981).

**13.** *See Occidental Life Insurance Co. v. EEOC,* 432 U.S. 355, 369–71, 97 S.Ct. 2447, 2456–57, 53 L.Ed.2d 402 (1977). As recited by the Secretary, for example, a recently published report indicates that in fiscal 1980, 78 OSHA discrimination investigators were on staff. At the beginning of that year 1,081 complaints were pending; during that year 4,029 more were filed, 1,935 were screened without a full field investigation, 1,517 required a full field investigation, 543 cases considered meritorious were settled or forwarded for litigation, and 1,712 were pending at the end of fiscal 1980. Thus, as highlighted by the Secretary, the backlog of complaints had increased by 70% by the end of fiscal 1980. The President's Report on Occupational Safety and Health for 1980, at pp. 47–48, 53 (Aug. 1981).

**14.** *See* note 3 *supra.*

**15.** In so holding, we do not pass upon appellee's contention that, in any event, the Secretary's suit was properly dismissed as the activity for which Fugitt was discharged was not protected under Section 11(c). The district court did not reach this issue, granting summary judgment solely on the ground that the Texas statute of limitations had run. Accordingly, this question is not before us.