In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-2820

KEVIN KASTEN,

*Plaintiff-Appellant,*

*v.*

SAINT-GOBAIN PERFORMANCE
PLASTICS CORPORATION,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 07-C-0686—**Barbara B. Crabb**, *Chief Judge.*

ARGUED APRIL 2, 2009—DECIDED JUNE 29, 2009

Before BAUER and FLAUM, *Circuit Judges*, and KAPALA,
*District Judge.*\*

FLAUM, *Circuit Judge.* Plaintiff Kevin Kasten appeals
the district court's grant of summary judgment to defen-
dant Saint-Gobain Performance Plastics Corporation
("Saint-Gobain"). Kasten claims that the district court

---

\* Of the Northern District of Illinois, sitting by designation.

erred in its interpretation of the Fair Labor Standards Act when it determined that Kasten had not suffered retaliation within the meaning of the statute. For the reasons explained below, we affirm the judgment of the district court.

## I. Background

Defendant Saint-Gobain is a corporation that manufactures a variety of high-performance materials at facilities throughout the country. Plaintiff Kevin Kasten worked in Saint-Gobain's Portage, Wisconsin facility from October 2003 to December 2006.

In order to receive their weekly paychecks, Saint-Gobain hourly employees must use a time card to swipe in and out of an on-sight Kronos time clock. On February 13, 2006, Kasten received a "Disciplinary Action Warning Notice - Verbal Counseling Warning" from Saint-Gobain because of several "issues" Kasten had with regard to punching in and out on the Kronos time clocks. The notice stated that "[i]f the same or any other violation occurs in the subsequent 12-month period from this date of verbal reminder, a written warning may be issued." Kasten signed the notice, acknowledging that he read and understood it.

On August 31, 2006, Kasten received a written warning from defendant, again related to swiping in and out on the Kronos clocks. The notice stated that "[i]f the same or any other violation occurs in the subsequent 12-month period from this date [sic] will result in

further disciplinary action up to and including termination." Kasten signed the written warning, again acknowledging that he read and understood it.

On November 10, 2006, plaintiff received yet another written warning from Saint-Gobain for failure to swipe in and out, this time accompanied by a one day disciplinary suspension. The warning stated that "[t]his is the last step of the discipline process" and that if another violation occurred, further discipline, including termination, could result. Kasten signed the warning, again acknowledging that he read and understood it.

Plaintiff alleges (though defendant disputes) that from October through December, 2006, he verbally complained to his supervisors about the legality of the location of Saint-Gobain's time clocks. Specifically, Kasten claims that he told his supervisors that the location of the Kronos clocks prevented employees from being paid for time spent donning and doffing their required protective gear. Regarding his complaints, plaintiff alleges (1) that he told Dennis Woolverton (his shift supervisor) that he believed the location of defendant's time clocks was illegal; (2) that he told Lani Williams (a Human Resources generalist) that the location of the time clocks was illegal; (3) that he told April Luther (a "Lead Operator" and apparently another of Kasten's supervisors) that the location of the time clocks was illegal; and (4) that he told Luther that he was thinking of commencing a lawsuit regarding the location of defendant's time clocks. Saint-Gobain denies that Kasten ever told any of his supervisors or any human resources personnel that he believed that the clock locations were illegal.

On December 6, 2006, Saint-Gobain suspended Kasten on the ground that he had violated its policy regarding time clock punching for the fourth time. Kasten claims that at a meeting regarding this suspension, he again verbally told his supervisors that he believed the location of the clocks was illegal and that if he challenged the company in court regarding the location of the clocks the company would lose. Saint-Grobain disputes that Kasten complained about the time clocks at this meeting. On December 11, 2006, Human Resources Manager Dennis Brown told Kasten over the phone that Saint-Gobain had decided to terminate his employment.

Kasten filed suit under the FLSA, claiming that he had been terminated in retaliation for his verbal complaints regarding the location of the time clocks. The district court granted summary judgment to defendant, finding that Kasten had not engaged in protected activity because he had not "filed any complaint" about the allegedly illegal location of the time clocks. Kasten appeals.

## II.  Discussion

The FLSA provides private remedies for employees who have suffered adverse employment actions as a result of engaging in certain protected activities. Section 215(a)(3) of the statute defines the scope of protected activity. It states, in relevant part:

> [I]t shall be unlawful for any person . . . to discharge or in any other manner discriminate against any employee because such employee has filed any com-

plaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee.

29 U.S.C. § 215(a)(3).

Here, Kasten seeks to establish a claim for retaliation based solely on his allegation that he "filed complaints" with his employers regarding the location of the time clocks. To determine whether Kasten engaged in protected activity, we must answer two questions about the scope of the FLSA's retaliation provision: first, whether intra-company complaints that are not formally filed with any judicial or administrative body are protected activity; and second, whether unwritten verbal complaints are protected activity.

The district court found that intra-company complaints were protected activity but concluded that unwritten verbal complaints were not protected activity. Kasten argues, along with a supporting amicus brief filed by the U.S. Secretary of Labor, that we should reverse the second portion of the district court's ruling holding that unwritten complaints are not protected activity under the statute. They claim that the FLSA retaliation provision should be read expansively to protect employees who make only internal, unwritten objections to their employers.

We review the district court's grant of summary judgment to defendant de novo and view the evidence in the light most favorable to the appellant. *Hancock v. Potter*, 531 F.3d 474, 478 (7th Cir. 2008).

### A. Internal Complaints

The Seventh Circuit has not directly addressed whether internal complaints are protected activity under the FLSA's retaliation provision, though we have reviewed two cases involving internal complaints without commenting on the matter. *See Scott v. Sunrise Health Care Corp.*, 195 F.3d 938, 940-41 (7th Cir. 1999) (affirming dismissal of FLSA retaliation case because plaintiff had not shown a causal connection between her complaints and her later discharge); *see also Shea v. Galaxie Lumber Constr. Co.*, 152 F.3d 729, 731, 734-36 (7th Cir. 1998) (reversing a denial of punitive damages in a case where an employee had been discharged after complaining to the company president).[1]

Statutory interpretation begins with "the language of the statute itself [and] [a]bsent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Sapperstein v. Hager*, 188 F.3d 852, 857 (7th Cir. 1999) (internal quotation marks and citation omitted) (interpreting retaliation provision of FLSA but not discussing whether internal complaints were protected conduct); *see also Consumer Prod. Safety Comm'n v. GTE Sylvania*, 447 U.S. 102, 107 (1980). Here, the plain language of the statute indicates that internal, intra-company complaints are protected. The retaliation provision states that it is "unlawful for any person to discharge . . . any employee because such employee has

---

[1] It appears that the parties in those cases did not raise the issues we are considering in this appeal.

filed *any complaint* . . . ." 29 U.S.C. § 215(a)(3) (emphasis added). As Kasten points out, the statute does not limit the types of complaints which will suffice, and in fact modifies the word "complaint" with the word "any." Thus, the language of the statute would seem to include internal, intra-company complaints as protected activity.

The majority of circuit courts considering the question have also found that "any complaint" includes internal complaints. *See Hagan v. Echostar Satellite*, LLC, 529 F.3d 617, 625 (5th Cir. 2008) (internal complaint constitutes protected activity); *Moore v. Freeman*, 355 F.3d 558 (6th Cir. 2004) (informal complaints are protected activity); *Lambert v. Ackerly*, 180 F.3d 1004, 1004 (9th Cir. 1999) (section 15(a)(3) protects "employees who complain about violations to their employers"); *Valerio v. Putnam Associates, Inc.*, 173 F.3d 35, 41 (1st Cir. 1999) ("By failing to specify that the filing of any complaint need be with a court or an agency, and by using the word 'any,' Congress left open the possibility that it intended 'complaint' to relate to less formal expressions of protest . . . conveyed to an employer."); *EEOC v. White & Son Enterprises*, 881 F.2d 1006, 1011 (11th Cir. 1989) (employees' internal complaints to supervisor about unequal pay were assertions of rights under the Equal Pay Act, part of the FLSA); *Love v. RE/MAX of America, Inc.*, 738 F.2d 383, 387 (10th Cir. 1984) (same); *but see Ball v. Memphis Bar-B-Q Co.*, 228 F.3d 360, 363-365 (4th Cir. 2000) (holding that 29 U.S.C. § 215(a)(3) does not protect internal complaints).

Because we conclude, in line with the vast majority of circuit courts to consider this issue, that the plain

language of 29 U.S.C. § 215(a)(3) includes internal complaints as protected activity, we affirm the judgment of the district court in this regard.

## B. Unwritten Complaints

The next question pertinent to this appeal is whether unwritten, purely verbal complaints are protected activity under the statute.

Again, we start with the language of the statute. *Sapperstein*, 188 F.3d at 857. The FLSA's retaliation provision prohibits "discharg[ing] . . . any employee because such employee has *filed* any complaint . . . ." 29 U.S.C. § 215(a)(3) (emphasis added). The district court reasoned:

> Expressing an oral complaint is not the same as filing a complaint. By definition, the word "file" refers to "a collection of papers, records, etc., arranged in a convenient order," Random House Webster's College Dictionary 489 (2d ed. 1999), or, when used in verb form as it is in the statute, "[t]o deliver (a paper or instrument) to the proper officer so that it is received by him to kept on file, or among the records of his office," Webster's New International Dictionary of the English Language 945 (2d ed. 1958). One cannot "file" an oral complaint; there is no document, such as a paper or record, to deliver to someone who can put it in its proper place.

Plaintiff disagrees with this interpretation. He argues that "to file" is a broad term that has several meanings, including, generally, "to submit."

Looking only at the language of the statute, we believe that the district court correctly concluded that unwritten, purely verbal complaints are not protected activity. The use of the verb "to file" connotes the use of a writing. Webster's Ninth New Collegiate Dictionary defines the verb "to file" as

> 1. to arrange in order for preservation and reference <"file letters"> 2. a: to place among official records as prescribed by law <"file a mortgage"> b: to perform the first act of (as a lawsuit) <"threatened to file charges against him">

This definition accords with what we believe to be the common understanding of the verb "to file." Although Kasten and the Secretary of Labor claim that "to file" can mean, generally, "to submit," this seems to us overbroad.[2] If an individual told a friend that she "filed a complaint

---

[2] The Secretary of Labor claims that because "it is not clear from the phrase 'file any complaint' that a complaint must be in writing, the Secretary's reasonable interpretation that both oral and written complaints are protected is entitled to *Skidmore* deference." However, the Secretary's interpretation of "filed any complaint" appears to rest solely on a litigating position rather than on a Department of Labor regulation, ruling, or administrative practice, and is therefore not entitled to deference. *See Smiley v. Citibank*, 517 U.S. 735, 741 (1996) ("[W]e deny deference 'to agency litigating positions that are wholly unsupported by regulations, rulings, or administrative practice.' The deliberateness of such positions, if not indeed their authoritativeness, is suspect.") (citing *Bowen v. Georgetown Univ. Hospital*, 488 U.S. 204, 212 (1988)).

with her employer," we doubt the friend would understand her to possibly mean that she merely voiced displeasure to a supervisor. Rather, the natural understanding of the phrase "file any complaint" requires the submission of some writing to an employer, court, or administrative body. *See United States v. Bank of Farmington*, 166 F.3d 853, 860 (7th Cir. 1999) ("Words in a statute are to be given their plain and ordinary meaning.") (citing *United States v. James*, 478 U.S. 597, 604 (1986)).

Other circuit courts that have tackled this issue are split. The Fourth Circuit found that verbal complaints were not protected activity in *Ball v. Memphis Bar-B-Q Co., Inc.*, 228 F.3d 360, 364 (4th Cir. 2000). The court recognized that the FLSA's "statutory language clearly places limits on the range of retaliation proscribed by the act." Specifically, in interpreting the "testimony" clause of the FLSA's retaliation provision, the Fourth Circuit held that the FLSA "prohibits retaliation for testimony given or about to be given *but not for an employee's voicing of a position* on working conditions in opposition to an employer." *Id.* (emphasis added). Although the Fourth Circuit acknowledged that the retaliation in that case— which followed an employee's statement to the company president that, if he were deposed in a lawsuit, he would not testify to the president's suggested version of events—was "morally unacceptable," the court concluded that a faithful interpretation of the statute did not recognize mere statements to a supervisor as a protected activity. *Id.*; *see also Lambert v. Genesee Hospital*, 10 F.3d 46, 55 (2d Cir. 1993) ("The plain language of this provision limits the cause of action to retaliation for filing formal

complaints, instituting a proceeding, or testifying, but does not encompass complaints made to a supervisor.") (citations omitted).

Other courts have found oral complaints to be protected activity, but it is difficult to draw guidance from these decisions because many of them do not specifically state whether the complaint in question was written or purely verbal, and none discusses the statute's use of the verb "to file" and whether it requires a writing. *See EEOC v. Romeo Community Schools*, 976 F.2d 985, 989-90 (6th Cir. 1992) (holding, without discussion of the verbal/written distinction, that plaintiff's apparently oral complaints to supervisors were protected activity); *EEOC v. White & Son Enters.*, 881 F.2d 1006, 1011 (11th Cir. 1989) (holding, without discussion of the verbal/written distinction, that plaintiffs' oral complaints were protected activity); *Brock v. Richardson*, 812 F.2d 121, 125 (8th Cir. 1987) (holding, without discussion of the verbal/written distinction, that defendant's mistaken belief that plaintiff had made apparently oral complaints to supervisors was grounds for suit); *Brennan v. Maxey's Yamaha*, 513 F.2d 179, 183 (8th Cir. 1975) (holding, without discussion of the verbal/written distinction, that employee's "voicing" of concern was protected activity).[3]

---

[3] The plaintiff and Secretary of Labor cite *Lambert v. Ackerley*, 180 F.3d 997 (9th Cir. 1999) and *Love v. RE/MAX of America, Inc.*, 738 F.2d 383 (10th Cir. 1984) to support their contention that unwritten complaints are covered by the statute. However, although *Ackerley* and *Love* contain favorable language for

(continued...)

Despite these contrary findings by some other circuits, our interpretation of the phrase "file any complaint" is confirmed by the fact that Congress could have, but did not, use broader language in the FLSA's retaliation provision. For example, analogous provisions in other statutes, including Title VII and the Age Discrimination in Employment Act, forbid employers from retaliating against any employee who "has opposed any practice" that is unlawful under the statutes. *See* 42 U.S.C. § 2000e-3(a); 29 U.S.C. § 623(d). This broader phrase, "opposed any practice," does not require a "fil[ing]," and has been interpreted to protect verbal complaints. *See, e.g., Kotcher v. Rosa and Sullivan Appliance Ctr., Inc.*, 957 F.2d 59, 65 (2d Cir. 1992). Congress's selection of the narrower "file any complaint" language in the FLSA thus appears to be significant. *See Ball*, 228 F.3d at 364 (noting that "Congress has crafted . . . broader anti-retaliation provisions elsewhere" but "the cause of action for retaliation under the FLSA is much more circumscribed"); *Genesee Hospital*, 10 F.3d at 55 (noting that the FLSA uses narrower language in its retaliation provision than Title VII).

Finally, we are aware that "'the remedial nature of the [FLSA] . . . warrants an expansive interpretation of its

---

[3] (...continued)

their argument, *see Ackerley* at 1008 ("[I]t is clear that so long as an employee communicates the *substance* of his allegations to the employer . . . he is protected by section 215(a)(3)); *Love*, at 387 ("the unofficial assertion of rights through complaints at work" is protected activity); those cases concerned written complaints filed with employers.

provisions . . . .'" *Sapperstein*, 188 F.3d at 857 (quoting *Herman v. RSR Security Services*, 172 F.3d 132, 139 (2d Cir. 1999)). But expansive interpretation is one thing; reading words out of a statute is quite another. Because we believe that the FLSA's use of the phrase "file any complaint" requires a plaintiff employee to submit some sort of writing, we agree with the district court's conclusion that Kasten's alleged complaints were not protected activity under the statute.

### III.  Conclusion

For the reasons explained above, we affirm the judgment of the district court.