(Slip Opinion)     OCTOBER TERM, 2010                    1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is
being done in connection with this case, at the time the opinion is issued.
The syllabus constitutes no part of the opinion of the Court but has been
prepared by the Reporter of Decisions for the convenience of the reader.
See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## KASTEN *v.* SAINT-GOBAIN PERFORMANCE PLASTICS CORP.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

No. 09–834.   Argued October 13, 2010—Decided March 22, 2011

Petitioner Kasten brought an antiretaliation suit against his former employer, respondent (Saint-Gobain), under the Fair Labor Standards Act of 1938 (Act), which provides minimum wage, maximum hour, and overtime pay rules; and which forbids employers "to discharge . . . any employee because such employee has filed any complaint" alleging a violation of the Act, 29 U. S. C. §215(a)(3).  In a related suit, the District Court found that Saint-Gobain violated the Act by placing timeclocks in a location that prevented workers from receiving credit for the time they spent donning and doffing work-related protective gear.  In this suit Kasten claims that he was discharged because he orally complained to company officials about the timeclocks.  The District Court granted Saint-Gobain summary judgment, concluding that the Act's antiretaliation provision did not cover oral complaints.  The Seventh Circuit affirmed.

*Held:* The scope of statutory term "filed any complaint" includes oral, as well as written, complaints.  Pp. 4–15.

   (a) The interpretation of the statutory phrase "depends upon reading the whole statutory text, considering the [statute's] purpose and context . . . , and consulting any precedents or authorities that inform the analysis."  *Dolan* v. *Postal Service*, 546 U. S. 481, 486.  The text, taken alone, cannot provide a conclusive answer here.  Some dictionary definitions of "filed" contemplate a writing while others permit using "file" in conjunction with oral material.  In addition to dictionary definitions, state statutes and federal regulations sometimes contemplate oral filings, and contemporaneous judicial usage shows that oral filings were a known phenomenon at the time of the Act's passage.  Even if "filed," considered alone, might suggest a narrow inter-

pretation limited to writings, "*any* complaint" suggests a broad inter-
pretation that would include an oral complaint. Thus, the three-word
phrase, taken by itself, cannot answer the interpretive question. The
Act's other references to "filed" also do not resolve the linguistic ques-
tion. Some of those provisions involve filed material that is virtually
always in writing; others specifically require a writing, and the re-
mainder, like the provision here, leave the oral/written question un-
resolved. Since "filed any complaint" lends itself linguistically to the
broader, "oral" interpretation, the use of broader language in other
statutes' antiretaliation provisions does not indicate whether Con-
gress did or did not intend to leave oral grievances unprotected here.
Because the text, taken alone, might, or might not, encompass oral
complaints, the Court must look further. Pp. 4–8.

(b) Several functional considerations indicate that Congress in-
tended the antiretaliation provision to cover oral, as well as written,
complaints. Pp. 8–14.

(1) A narrow interpretation would undermine the Act's basic ob-
jective, which is to prohibit "labor conditions detrimental to the
maintenance of the minimum standard of living necessary for health,
efficiency, and general well-being of workers," 29 U. S. C. §202(a).
The Act relies for enforcement of its substantive standards on "infor-
mation and complaints received from employees," *Mitchell* v. *Robert
DeMario Jewelry, Inc.*, 361 U. S. 288, 292, and its antiretaliation pro-
vision makes the enforcement scheme effective by preventing "fear of
economic retaliation" from inducing workers "quietly to accept sub-
standard conditions," *ibid.* Why would Congress want to limit the en-
forcement scheme's effectiveness by inhibiting use of the Act's com-
plaint procedure by those who would find it difficult to reduce their
complaints to writing, particularly the illiterate, less educated, or
overworked workers who were most in need of the Act's help at the
time of passage? Limiting the provision's scope to written complaints
could prevent Government agencies from using hotlines, interviews,
and other oral methods to receive complaints. And insofar as the
provision covers complaints made to employers, a limiting reading
would discourage using informal workplace grievance procedures to
secure compliance with the Act. The National Labor Relations Act's
antiretaliation provision has been broadly interpreted as protecting
workers who simply "participate[d] in a [National Labor Relations]
Board investigation." *NLRB* v. *Scrivener*, 405 U. S. 117, 123. The
similar enforcement needs of this related statute argue for a broad
interpretation of "complaint." The Act's requirement that an em-
ployer receive fair notice of an employee's complaint can be met by
oral, as well as written, complaints. Pp. 8–12.

(2) Given the delegation of enforcement powers to federal admin-

Syllabus

istrative agencies, their views about the meaning of the phrase should be given a degree of weight. The Secretary of Labor has consistently held the view that "filed any complaint" covers both oral and written complaints. The Equal Employment Opportunity Commission has set out a similar view in its Compliance Manual and in multiple briefs. These views are reasonable and consistent with the Act. And the length of time they have been held suggests that they reflect careful consideration, not "*post hoc* rationalizatio[n]." *Motor Vehicle Mfrs. Assn. of United States, Inc.* v. *State Farm Mut. Automobile Ins. Co.*, 463 U. S. 29, 50. Pp. 12–13.

(3) After engaging in traditional statutory interpretation methods, the statute does not remain sufficiently ambiguous to warrant application of the rule of lenity. Pp. 13–14.

(c) This Court will not consider Saint-Gobain's alternative claim that the antiretaliation provision applies only to complaints filed with the Government, since that claim was not raised in the certiorari briefs and since its resolution is not a " 'predicate to an intelligent resolution' " of the oral/written question at issue, *Caterpillar Inc.* v. *Lewis*, 519 U. S. 61, 75, n. 13. Pp. 14–15.

570 F. 3d 834, vacated and remanded.

BREYER, J., delivered the opinion of the Court, in which ROBERTS, C. J., and KENNEDY, GINSBURG, ALITO, and SOTOMAYOR, JJ., joined. SCALIA, J., filed a dissenting opinion, in which THOMAS, J., joined as to all but n. 6. KAGAN, J., took no part in the consideration or decision of the case.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 09–834

KEVIN KASTEN, PETITIONER *v.* SAINT-GOBAIN PERFORMANCE PLASTICS CORPORATION

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

[March 22, 2011]

JUSTICE BREYER delivered the opinion of the Court.

The Fair Labor Standards Act of 1938 (Act) sets forth employment rules concerning minimum wages, maximum hours, and overtime pay. 52 Stat. 1060, 29 U. S. C. §201 *et seq.* The Act contains an antiretaliation provision that forbids employers

> "to discharge or in any other manner discriminate against any employee because such employee has *filed any complaint* or instituted or caused to be instituted any proceeding under or related to [the Act], or has testified or is about to testify in such proceeding, or has served or is about to serve on an industry committee." §215(a)(3) (emphasis added).

We must decide whether the statutory term "filed any complaint" includes oral as well as written complaints within its scope. We conclude that it does.

## I

The petitioner, Kevin Kasten, brought this antiretaliation lawsuit against his former employer, Saint-Gobain Performance Plastics Corporation. Kasten says that

Saint-Gobain located its timeclocks between the area where Kasten and other workers put on (and take off) their work-related protective gear and the area where they carry out their assigned tasks. That location prevented workers from receiving credit for the time they spent putting on and taking off their work clothes—contrary to the Act's requirements. In a related suit the District Court agreed with Kasten, finding that Saint-Gobain's "practice of not compensating . . . for time spent donning and doffing certain required protective gear and walking to work areas" violated the Act. *Kasten* v. *Saint-Gobain Performance Plastics Corp.*, 556 F. Supp. 2d 941, 954 (WD Wis. 2008). In this suit Kasten claims unlawful retaliation. He says that Saint-Gobain discharged him because he orally complained to Saint-Gobain officials about the timeclocks.

In particular, Kasten says that he repeatedly called the unlawful timeclock location to Saint-Gobain's attention—in accordance with Saint-Gobain's internal grievance-resolution procedure. See Brief for Petitioner 4 (quoting Saint-Gobain's Code of Ethics and Business Conduct as imposing upon every employee "the responsibility to report . . . suspected violations of . . . any applicable law of which he or she becomes aware"); *id.*, at 4–5 (quoting Saint-Gobain's Employee Policy Handbook as instructing employees with "questions, complaints, and problems" to "[c]ontact" their "supervisor[s] immediately" and if necessary "take the issue to the next level of management," then to the "local Human Resources Manager," then to "Human Resources" personnel at the "Regional" or "Head-quarters" level).

Kasten adds that he "raised a concern" with his shift supervisor that "it was illegal for the time clocks to be where they were" because of Saint-Gobain's exclusion of "the time you come in and start doing stuff"; he told a human resources employee that "if they were to get chal-

lenged on" the location in court, "they would lose"; he told his lead operator that the location was illegal and that he "was thinking about starting a lawsuit about the placement of the time clocks"; and he told the human resources manager and the operations manager that he thought the location was illegal and that the company would "lose" in court. Record in No. 3:07–cv–00686–bbc (WD Wis.), Doc. 87–3, pp. 31–34 (deposition of Kevin Kasten). This activity, Kasten concludes, led the company to discipline him and, in December 2006, to dismiss him.

Saint-Gobain presents a different version of events. It denies that Kasten made any significant complaint about the timeclock location. And it says that it dismissed Kasten simply because Kasten, after being repeatedly warned, failed to record his comings and goings on the timeclock.

For present purposes we accept Kasten's version of these contested events as valid. See *Scott* v. *Harris*, 550 U. S. 372, 380 (2007). That is because the District Court entered summary judgment in Saint-Gobain's favor. 619 F. Supp. 2d 608, 610 (WD Wis. 2008). And it did so, not because it doubted Kasten's ability to prove the facts he alleged, but because it thought the Act did not protect *oral* complaints. *Id.*, at 611–613. On appeal, the Seventh Circuit agreed with the District Court that the Act's antiretaliation provision does not cover oral complaints. 570 F. 3d 834, 838–840 (2009).

Kasten sought certiorari. And in light of conflict among the Circuits as to whether an oral complaint is protected, we granted Kasten's petition. Compare *Hagan* v. *Echostar Satellite, L. L. C.*, 529 F. 3d 617, 625–626 (CA5 2008) (antiretaliation provision covers oral complaints); *Lambert* v. *Ackerley*, 180 F. 3d 997, 1007 (CA9 1999) (en banc) (same); with *Lambert* v. *Genesee Hospital*, 10 F. 3d 46, 55–56 (CA2 1993) (antiretaliation provision does not cover informal complaints to supervisors). See also *Pacheco* v. *Whiting Farms, Inc.*, 365 F. 3d 1199, 1206 (CA10 2004)

(antiretaliation provision covers unofficial assertion of rights); *EEOC* v. *White & Son Enterprises*, 881 F. 2d 1006, 1011–1012 (CA11 1989) (same); *Moore* v. *Freeman*, 355 F. 3d 558, 562–563 (CA6 2004) (assuming without discussion that oral complaints are covered); *Brennan* v. *Maxey's Yamaha, Inc.*, 513 F. 2d 179, 181 (CA8 1975) (same).

## II

The sole question presented is whether "an oral complaint of a violation of the Fair Labor Standards Act" is "protected conduct under the [Act's] anti-retaliation provision." Pet. for Cert. i. The Act protects employees who have "filed any complaint," 29 U. S. C. §215(a)(3), and interpretation of this phrase "depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis," *Dolan* v. *Postal Service*, 546 U. S. 481, 486 (2006). This analysis leads us to conclude that the language of the provision, considered in isolation, may be open to competing interpretations. But considering the provision in conjunction with the purpose and context leads us to conclude that only one interpretation is permissible.

## A

We begin with the text of the statute. The word "filed" has different relevant meanings in different contexts. Some dictionary definitions of the word contemplate a writing. See, *e.g.*, Webster's New International Dictionary 945 (2d ed. 1934) (def. 4(a)) (to file is to "deliver *(a paper or instrument)* to the proper officer so that it is received by him to be kept on file, or among the records of his office" (emphasis added)); Webster's Ninth New Collegiate Dictionary 462 (1983) (def. 2(a)) (one definition of "file" is "to place among official records as prescribed by law").

But other dictionaries provide different definitions that

permit the use of the word "file" in conjunction with oral material. One can, for example, file an oral statement that enters a matter "into the order of business." 1 Funk & Wagnalls New Standard Dictionary of the English Language 920 (rev. ed. 1938) (def. 2) (to file is to "present in the regular way, as to a judicial or legislative body, so that it shall go upon the records or into the order of business"). This possibility is significant because it means that dictionary meanings, even if considered alone, do not *necessarily* limit the scope of the statutory phrase to written complaints. Cf. *Crawford* v. *Metropolitan Government of Nashville and Davidson Cty.*, 555 U. S. \_\_\_, \_\_\_ (2009) (slip op., at 5) (looking for the "limits" of a linguistic phrase rather than what "exemplif[ies]" its application).

In addition to the dictionary definitions, we have found that legislators, administrators, and judges have all sometimes used the word "file" in conjunction with oral statements. Thus state statutes sometimes contemplate oral filings. See, *e.g.*, Alaska Stat. §47.32.090(a) (2008) ("file a verbal or written complaint"); Cal. Health & Safety Code Ann. §17055(a) (West 2006) ("file an administrative complaint orally or in writing"); D. C. Code §7–1231.12(a)(2)(B) (2001) ("filing his or her grievance, orally or in writing"); Ga. Code Ann. §§31–8–124(a), (c), 31–8–134(b) (2009) ("to file a grievance," a person may "submit an oral or written complaint"); Ind. Code §27–8–28–14(a) (2009) ("file a grievance orally or in writing"); Me. Rev. Stat. Ann., Tit. 34–B, §5604(3)(B) (2009) ("filed through an oral request"); Miss. Code Ann. §69–47–23(4) (2005) ("file a written or oral complaint"); Mo. Rev. Stat. §198.088.3(3) (2009) (to have a complaint "filed," a person "shall write or cause to be written his grievance or shall state it orally"); Nev. Rev. Stat. §§618.336(2)(a), 618.341(1)(a) (2009) ("oral or written complaint filed"); N. J. Stat. Ann. §30:4C–12 (West 2008) ("written or oral complaint may be filed"); N. Y. Ins. Law Ann. §§3217–a(a)(7), 4324(a)(7) (West

2006) ("file a grievance orally"); N. Y. Pub. Health Law
Ann. §§4408(1)(g) (West Supp. 2010) ("file a grievance
orally"); Pa. Stat. Ann., Tit. 40, §§991.2141(a)–(b) (Purdon
1999) ("file a . . . written or oral complaint"); Tex. Ins.
Code Ann. §§1305.401(a)–(b) (West 2009) ("oral or written
complaint" must be "file[d]"); Wash. Rev. Code
§§90.64.030(3), (5) (2008) ("complaints have been filed . . .
as the result of either an oral or a written complaint").

   Regulations promulgated by various federal agencies
sometimes permit complaints to be filed orally. See, *e.g.,*
32 CFR §842.20 (2010) ("[f]iling a claim" may proceed
"orally or in writing"); 42 CFR §422.564(d)(1) (2009) ("file
a grievance . . . either orally or in writing"); §423.564(d)(1)
(same); §438.402(b)(3)(i) ("file a grievance either orally or
in writing"); §494.180(e) ("file an oral or written griev-
ance"); 49 CFR §1503.629(c) (2009) ("[f]iling of motions . . .
must be in writing or orally on the record" (italics omit-
ted)); 42 CFR §438.402(b)(3)(ii) (2009) ("file an appeal
either orally or in writing").

   And a review of contemporaneous judicial usage, cf.
*Utah* v. *Evans,* 536 U. S. 452, 475 (2002), shows that oral
filings were a known phenomenon when the Act was
passed. See, *e.g., Reed Oil Co.* v. *Cain,* 169 Ark. 309, 312,
275 S. W. 333, 334 (1925) ("appellee filed . . . an oral com-
plaint"); *Tingler* v. *Lahti,* 87 W. Va. 499, 503, 105 S. E.
810, 812 (1921) ("complaint subsequently filed, either oral
or written"); *Ex parte Mosgrove,* 47 Okla. Cr. 40, 287 P.
795 (1930) (only "complaint . . . filed against him" was
"oral complaint of the town marshal"); *Indian Fred* v.
*State,* 36 Ariz. 48, 52–53, 282 P. 930, 932 (1929) ("filed an
oral motion to quash"); *Dunn* v. *State,* 60 Okla. Cr. 201,
203, 63 P. 2d 772, 773 (1936) ("filed an oral demurrer");
*Morrison* v. *Lewis,* 58 Ga. App. 677, 199 S. E. 782 (1938)
("filed an oral motion" demurring); *Brock* v. *Cullum Bros.,*
263 S. W. 335 (Tex. Civ. App. 1924) ("filed an oral motion
to quash"); *Fike* v. *Allen,* 269 S. W. 179, 180 (Tex. Civ.

App. 1925) ("filed oral pleadings").

Filings may more often be made in writing. See, *e.g.*, *Ritter* v. *United States*, 28 F. 2d 265, 267 (CA3 1928) (finding words "file a claim for refund" to require a written request in context of tax code). But we are interested in the filing of "*any* complaint." So even if the word "filed," considered alone, might suggest a narrow interpretation limited to writings, the phrase "*any* complaint" suggests a broad interpretation that would include an oral complaint. See, *e.g.*, *Republic of Iraq* v. *Beaty*, 556 U. S. \_\_\_, \_\_\_ (2009) (slip op., at 7). The upshot is that the three-word phrase, taken by itself, cannot answer the interpretive question.

We can look further to other appearances of the word "filed" in the Act. See *MCI Telecommunications Corp.* v. *American Telephone & Telegraph Co.*, 512 U. S. 218, 226 (1994) (examining "contextual indications" of the meaning of a term). That word (or a variant) appears in numerous other provisions. But its appearance elsewhere in the Act does not resolve the linguistic question before us. Some of those other provisions (1) involve filed material that, unlike a complaint, is of a kind that is virtually always in writing. See, *e.g.*, 29 U. S. C. §203(*l*) (employers must "have on file *an unexpired certificate*" (emphasis added)); §210(a) (Secretary must "file in the court *the record of the industry committee"* (emphasis added)); *ibid.* (industry committee must "file" its findings and recommendations). Others (2) specifically require a writing, see, *e.g.,* §214(c)(5)(A) (requiring employee's "consent *in writing"* to join collective action to be "filed" (emphasis added)); §216(b) (same). And the remainder (3) leave the oral/written question unresolved—just as does the provision before us. See, *e.g.*, §210(b) (prohibiting a stay unless movant "file[s] in court an *undertaking"* (emphasis added)); §214(c)(5)(A) (employee "may file . . . a *petition"* for review of a special wage rate (emphasis added)).

Looking beyond the Act, we find other statutes that contain antiretaliation provisions. Those statutes, however, use somewhat different language. See, *e.g.*, §158(a)(4) (protecting an employee who has "filed charges or given testimony"); §623(d) (protecting those who "*opposed* any [unlawful] practice" (emphasis added)); 42 U. S. C. §§2000e–3(a), 12203(a) (same); 29 U. S. C. §2615(a)(2) (similar). See also, *e.g.,* 15 U. S. C. §2087(a)(1) (2006 ed., Supp. III) ("*provided* . . . to the employer . . . *information* relating to any violation" (emphasis added)); §2651(a) (similar); 30 U. S. C. §815(c)(1) ("filed *or made* a complaint" (emphasis added)); 42 U. S. C. §5851(a)(1)(A) ("*notified* his employer" (emphasis added)); 49 U. S. C. §42121(a)(1) ("*provided* . . . *information*" (emphasis added)); §60129(a)(1) (same). Some of this language is broader than the phrase before us, but, given the fact that the phrase before us lends itself linguistically to the broader, "oral" interpretation, the use of broader language elsewhere *may* mean (1) that Congress wanted to limit the scope of the phrase before us to writings, or (2) that Congress did not believe the different phraseology made a significant difference in this respect. The language alone does not tell us whether Congress, if intending to protect orally expressed grievances elsewhere, did or did not intend to leave those oral grievances unprotected here.

The bottom line is that the text, taken alone, cannot provide a conclusive answer to our interpretive question. The phrase "filed any complaint" might, or might not, encompass oral complaints. We must look further.

## B

### 1

Several functional considerations indicate that Congress intended the antiretaliation provision to cover oral, as well as written, "complaint[s]." First, an interpretation that limited the provision's coverage to written complaints

would undermine the Act's basic objectives. The Act seeks to prohibit "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U. S. C. §202(a). It does so in part by setting forth substantive wage, hour, and overtime standards. It relies for enforcement of these standards, not upon "continuing detailed federal supervision or inspection of payrolls," but upon "information and complaints received from employees seeking to vindicate rights claimed to have been denied." *Mitchell* v. *Robert DeMario Jewelry, Inc.*, 361 U. S. 288, 292 (1960). And its antiretaliation provision makes this enforcement scheme effective by preventing "fear of economic retaliation" from inducing workers "quietly to accept substandard conditions." *Ibid.*

Why would Congress want to limit the enforcement scheme's effectiveness by inhibiting use of the Act's complaint procedure by those who would find it difficult to reduce their complaints to writing, particularly illiterate, less educated, or overworked workers? President Franklin Roosevelt pointed out at the time that these were the workers most in need of the Act's help. See Message to Congress, May 24, 1937, H. R. Doc. No. 255, 75th Cong., 1st Sess., 4 (seeking a bill to help the poorest of "those who toil in factory").

In the years prior to the passage of the Act, illiteracy rates were particularly high among the poor. See E. Gordon & E. Gordon, Literacy in America 273 (2003) (one-quarter of World War I conscripts were illiterate); Dept. of Commerce, Bureau of Census, Sixteenth Census of the United States, 1940, Population: The Labor Force (Sample Statistics): Occupational Characteristics 60 (1943) (20.8% of manufacturing laborers in 1940 had less than five years of schooling). Those rates remained high in certain industries for many years after the Act's passage. In 1948, for example, the National War Labor Board wrote:

"In many plants where there is a high degree of illiteracy, the writing of grievances by employees works a substantial hardship.  In other plants where there is considerable dirt and special clothes must be worn, it is often not practicable to write up grievances during work hours."  1 The Termination Report of the National War Labor Board, p. 122.

To limit the scope of the antiretaliation provision to the filing of written complaints would also take needed flexibility from those charged with the Act's enforcement.  It could prevent Government agencies from using hotlines, interviews, and other oral methods of receiving complaints.  And insofar as the antiretaliation provision covers complaints made to employers (a matter we need not decide, see *infra,* at 14–15), it would discourage the use of desirable informal workplace grievance procedures to secure compliance with the Act.  Cf. *Burlington Industries, Inc.* v. *Ellerth*, 524 U. S. 742, 764 (1998) (reading Title VII to encourage the development of effective grievance procedures to deter misconduct); D. McPherson, C. Gates, & K. Rogers, Resolving Grievances: A Practical Approach 38–40 (1983) (describing the significant benefits of unwritten complaints).

Given the need for effective enforcement of the National Labor Relations Act (NLRA), this Court has broadly interpreted the language of the NLRA's antiretaliation provision—"filed charges or given testimony," 29 U. S. C. §158(a)(4)—as protecting workers who *neither* filed charges *nor* were "called *formally* to testify" but simply "participate[d] in a [National Labor Relations] Board investigation."  *NLRB* v. *Scrivener*, 405 U. S. 117, 123 (1972) (emphasis added).  The similar enforcement needs of this related statute argue for an interpretation of the word "complaint" that would provide "broad rather than narrow protection to the employee," *id.*, at 122 (and would

do so here without pressing statutory language to its limit). See also *Tennessee Coal, Iron & R. Co.* v. *Muscoda Local No. 123*, 321 U. S. 590, 597 (1944) (the Act's "remedial and humanitarian . . . purpose" cautions against "narrow, grudging" interpretations of its language).

Saint-Gobain replies that worker protection is not the only relevant statutory objective. The Act also seeks to establish an enforcement system that is fair to employers. To do so, the employer must have fair notice that an employee is making a complaint that could subject the employer to a later claim of retaliation. If oral complaints suffice, Saint-Gobain adds, employers too often will be left in a state of uncertainty about whether an employee (particularly an employee who seems unusually angry at the moment) is in fact making a complaint about an Act violation or just letting off steam.

We agree with Saint-Gobain that the statute requires fair notice. Although the dictionary definitions, statutes, regulations, and judicial opinions we considered, see *supra*, at 4–7, do not distinguish between writings and oral statements, they do suggest that a "filing" is a serious occasion, rather than a triviality. As such, the phrase "filed any complaint" contemplates some degree of formality, certainly to the point where the recipient has been given fair notice that a grievance has been lodged and does, or should, reasonably understand the matter as part of its business concerns.

Moreover, the statute prohibits employers from discriminating against an employee "*because* such employee has filed any complaint." §215(a)(3) (emphasis added). And it is difficult to see how an employer who does not (or should not) know an employee has made a complaint could discriminate *because* of that complaint. But we also believe that a fair notice requirement does not necessarily mean that notice must be in writing.

At oral argument, the Government said that a complaint

is "filed" when "a reasonable, objective person would have understood the employee" to have "put the employer on notice that [the] employee is asserting statutory rights under the [Act]." Tr. of Oral Arg. 23, 26. We agree. To fall within the scope of the antiretaliation provision, a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection. This standard can be met, however, by oral complaints, as well as by written ones.

2

Second, given Congress' delegation of enforcement powers to federal administrative agencies, we also give a degree of weight to their views about the meaning of this enforcement language. See 29 U. S. C. §216(c) (vesting enforcement power in Secretary of Labor); Reorganization Plan No. 1 of 1978, 5 U. S. C. App. §1, p. 664 (transferring to Equal Employment Opportunity Commission (EEOC) enforcement of this antiretaliation provision as part of its Equal Pay Act enforcement responsibilities); *Skidmore* v. *Swift & Co.*, 323 U. S. 134, 140 (1944) (giving weight to a persuasive articulation of views within an agency's area of expertise).

The Secretary of Labor has consistently held the view that the words "filed any complaint" cover oral, as well as written, complaints. The Department of Labor articulated that view in an enforcement action filed many years ago, *Goldberg* v. *Zenger*, 43 CCH LC ¶31,155, pp. 40,985, 40,986 (D Utah 1961). It has subsequently reaffirmed that view in briefs. See, *e.g.*, Brief for Secretary of Labor as *Amicus Curiae* Supporting Petition for Rehearing with Suggestion for Rehearing *En Banc* in *Lambert* v. *Ackerley*, No. 96–36017 etc. (CA9), pp. 6–7. And more recently it has acted in accordance with that view by creating a hot-

line to receive oral complaints, see Dept. of Labor, Compliance Assistance By Law—The Fair Labor Standards Act (FLSA), http://www.dol.gov/compliance/laws/comp-flsa.htm (as visited Mar. 18, 2011, and available in Clerk of Court's case file) (directing participants who wish to "file a complaint" to contact a local office "or call the Department's Toll-Free Wage and Hour Help Line at 1–866–4–US–WAGE").

The EEOC has set forth a similar view in its Compliance Manual, Vol. 2, §8–II(B)(1), p. 8–3, and n. 12 (1998), and in multiple briefs, see, *e.g.,* Brief for EEOC as *Amicus Curiae* in Support of Petition for Rehearing with Suggestion for Rehearing *En Banc* in *Lambert* v. *Ackerley*, No. 96–36017 etc. (CA9), pp. 8–13; Brief for Appellee in *EEOC* v. *White & Son Enterprises, Inc.*, No. 88–7658 (CA11), pp. 29–30.

These agency views are reasonable. They are consistent with the Act. The length of time the agencies have held them suggests that they reflect careful consideration, not "*post hoc* rationalizatio[n]." *Motor Vehicle Mfrs. Assn. of United States, Inc.* v. *State Farm Mut. Automobile Ins. Co.*, 463 U. S. 29, 50 (1983). And they consequently add force to our conclusion. *Skidmore, supra,* at 140; cf. *United States* v. *Mead Corp.*, 533 U. S. 218, 229, 234–235 (2001) (Court sometimes finds judicial deference intended even in absence of rulemaking authority); *Babbitt* v. *Sweet Home Chapter, Communities for Great Ore.*, 515 U. S. 687, 703–704, and n. 18 (1995) (agency views, where the law counsels deference, can clarify otherwise ambiguous statutory provisions).

3

Finally, we note that Saint-Gobain invokes the "rule of lenity" in support of its "written complaint" interpretation. That rule applies primarily to the interpretation of criminal statutes. It leads us to favor a more lenient interpre-

tation of a criminal statute "when, after consulting tradi-
tional canons of statutory construction, we are left with an
ambiguous statute." *United States* v. *Shabani*, 513 U. S.
10, 17 (1994). We agree with Saint-Gobain that those who
violate the antiretaliation provision before us are subject
to criminal sanction, 29 U. S. C. §216(a). And we have
said that the rule of lenity can apply when a statute with
criminal sanctions is applied in a noncriminal context.
See *Leocal* v. *Ashcroft*, 543 U. S. 1, 11, n. 8 (2004). But
after engaging in traditional methods of statutory inter-
pretation, we cannot find that the statute remains suffi-
ciently ambiguous to warrant application of the rule of
lenity here.

C

Alternatively, Saint-Gobain claims that it should prevail
because Kasten complained to a private employer, not to
the Government; and, in Saint-Gobain's view, the antire-
taliation provision applies only to complaints filed with
the Government. Saint-Gobain advanced this claim in the
lower courts, which held to the contrary. 570 F. 3d, at
837–838; 619 F. Supp. 2d, at 613. But Saint-Gobain said
nothing about it in response to Kasten's petition for certio-
rari. Indeed, it did not mention the claim in this Court
until it filed its brief on the merits.

We do not normally consider a separate legal question
not raised in the certiorari briefs. See this Court's Rule
15.2; *Caterpillar Inc.* v. *Lewis*, 519 U. S. 61, 75, n. 13
(1996). We see no reason to make an exception here.
Resolution of the Government/private employer question
is not a ""'"predicate to an intelligent resolution"'"' of the
oral/written question that we granted certiorari to decide.
See *ibid.* (quoting *Ohio* v. *Robinette*, 519 U. S. 33, 38
(1996)). That is to say, we can decide the oral/written
question separately—on its own. And we have done so.
Thus, we state no view on the merits of Saint-Gobain's

alternative claim. Cf. *post*, at 1–5 (SCALIA, J., dissenting).

\*     \*     \*

We conclude that the Seventh Circuit erred in determining that oral complaints cannot fall within the scope of the phrase "filed any complaint" in the Act's antiretaliation provision. We leave it to the lower courts to decide whether Kasten will be able to satisfy the Act's notice requirement. We vacate the Circuit's judgment and remand the case for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE KAGAN took no part in the consideration or decision of this case.

# SUPREME COURT OF THE UNITED STATES

———————

No. 09–834

———————

## KEVIN KASTEN, PETITIONER *v.* SAINT-GOBAIN PERFORMANCE PLASTICS CORPORATION

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE SEVENTH CIRCUIT

[March 22, 2011]

JUSTICE SCALIA, with whom JUSTICE THOMAS joins as to all but footnote 6, dissenting.

The Seventh Circuit found for the employer because it held that the Fair Labor Standards Act of 1938 (FLSA), 29 U. S. C. §215(a)(3), covers only written complaints to the employer. I would affirm the judgment on the ground that §215(a)(3) does not cover complaints to the employer at all.

I

The FLSA's retaliation provision states that it shall be unlawful

> "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee." *Ibid.*

The phrase central to the outcome here is "filed any complaint." In the courts below, Kasten asserted a claim for retaliation based solely on allegations that he "filed" oral "complaints" with his employer; Saint-Gobain argued that the retaliation provision protects only complaints that are (1) in writing, and (2) made to judicial or administrative

bodies. I agree with at least the second part of Saint-Gobain's contention. The plain meaning of the critical phrase and the context in which appears make clear that the retaliation provision contemplates an official grievance filed with a court or an agency, not oral complaints—or even formal, written complaints—from an employee to an employer.

## A

In isolation, the word "complaint" could cover Kasten's objection: It often has an expansive meaning, connoting any "[e]xpression of grief, regret, pain . . . or resentment." Webster's New International Dictionary 546 (2d ed. 1934) (hereinafter Webster's). But at the time the FLSA was passed (and still today) the word when used in a legal context has borne a specialized meaning: "[a] formal allegation or charge against a party, made or presented to the appropriate court or officer." *Ibid.* See also Cambridge Dictionary of American English 172 (2000) ("a formal statement to a government authority that you have a legal cause to complain about the way you have been treated"); 3 Oxford English Dictionary 608 (2d ed. 1989) ("[a] statement or injury or grievance laid before a court or judicial authority . . . for purposes of prosecution or of redress").

There are several reasons to think that the word bears its specialized meaning here. First, every other use of the word "complaint" in the FLSA refers to an official filing with a governmental body. Sections 216(b) and (c) both state that the right to bring particular types of actions "shall terminate upon the filing of a complaint" by the Secretary of Labor, and §216(c) clarifies that the statute of limitations begins running in actions to recover unpaid wages "on the date when the complaint is filed." These provisions unquestionably use "complaint" in the narrow legal sense. Identical words used in different parts of a statute are presumed to have the same meaning absent

contrary indication, *IBP, Inc.* v. *Alvarez*, 546 U. S. 21, 34 (2005); *Sullivan* v. *Stroop*, 496 U. S. 478, 484 (1990). It is one thing to expand the meaning of "complaint" in §215(a)(3) to include complaints filed with an agency instead of a court; it is quite something else to wrench it from the legal context entirely, to include an employee's objection to an employer.

Second, the word "complaint" appears as part of the phrase "filed any complaint" and thus draws meaning from the verb with which it is connected. The choice of the word "filed" rather than a broader alternative like "made," if it does not connote (as the Seventh Circuit believed, and as I need not consider) something in writing, at least suggests a degree of formality consistent with legal action and inconsistent (at least in the less regulated work environment of 1938) with employee-to-employer complaints. It is noteworthy that every definition of the verb "filed" that the Court's opinion provides, whether it supports the inclusion of oral content or not, envisions a formal, prescribed process of delivery or submission. *Ante*, at 4–5 (comparing, for example, Webster's 945 (to file is to "deliver (a paper or instrument) to the proper officer") with 1 Funk & Wagnalls New Standard Dictionary of the English Language 920 (rev. ed. 1938) (to file is to "present in the regular way, as to a judicial or legislative body")).

Moreover, "[t]he law uses familiar legal expressions in their familiar legal sense," *Henry* v. *United States*, 251 U. S. 393, 395 (1920). It is, I suppose, possible to speak of "filing a complaint" with an employer, but that is assuredly not common usage. Thus, when the antiretaliation provision of the Mine Health and Safety Act used that phrase in a context that includes both complaints to an agency and complaints to the employer, it did not use "filed" alone, but supplemented that with "or made"—and to boot specified "including a complaint notifying the [mine] operator . . . of an alleged danger or safety or health

violation . . . ." 30 U. S. C. §815(c)(1).[1]

Third, the phrase "filed any complaint" appears along-side three other protected activities: "institut[ing] or caus[ing] to be instituted any proceeding under or related to this chapter," "testif[ying] in any such proceeding," and "serv[ing] . . . on an industry committee."[2] 29 U. S. C. §215(a)(3). Since each of these three activities involves an interaction with governmental authority, we can fairly attribute this characteristic to the phrase "filed any com-plaint" as well. "That several items in a list share an attribute counsel in favor of interpreting the other items as possessing that attribute as well." *Beecham* v. *United States*, 511 U. S. 368, 371 (1994).

And finally, the 1938 version of the FLSA, while creat-ing private rights of action for other employer violations, see §16(b), 52 Stat. 1069, did not create a private right of action for retaliation. That was added in 1977, see §10, 91 Stat. 1252. Until then, only the Administrator of the Wage and Hour Division of the Department of Labor could enforce the retaliation provision. See §11(a), 52 Stat. 1066. It would seem more strange to require the employee to go to the Administrator to establish, and punish retalia-tion for, his intracompany complaint, than to require the Administrator-protected complaint to be filed with the

———————

[1] Kasten and this Court's opinion, *ante*, at 7, argue that the use of the modifier "any" in the phrase "filed *any* complaint" suggests that Con-gress meant to define the word "complaint" expansively. Not so. The modifier "any" does not cause a word that is in context narrow to become broad. The phrase "to cash a check at any bank" does not refer to a river bank, or even a blood bank.

[2] Section 5 of the original FLSA, which has since been repealed, charged industry committees with recommending minimum wages for certain industries to the Department of Labor. 52 Stat. 1062. In order to perform this function, industry committees were empowered, among other things, to "hear . . . witnesses" and "receive . . . evidence." §8(b), *id.,* at 1064.

Administrator in the first place.[3]

## B

### 1

The meaning of the phrase "filed any complaint" is clear in light of its context, and there is accordingly no need to rely on abstractions of congressional purpose. Nevertheless, Kasten argues that protecting intracompany complaints best accords with the purpose of the FLSA—"to assure fair compensation to covered employees"—because such purposes are "advanced when internal complaints lead to voluntary compliance." Reply Brief for Petitioner 18. But no legislation pursues its ends at all costs. *Rodriguez* v. *United States*, 480 U. S. 522, 525–526 (1987) *(per curiam)*. Congress may not have protected intracompany complaints for the same reason it did not provide a private cause of action for retaliation against complaints: because it was unwilling to expose employers to the litigation, or to the inability to dismiss unsatisfactory workers, which that additional step would entail. Limitation of the retaliation provision to agency complaints may have been an attempt "to achieve the benefits of regulation right up to the point where the costs of further benefits exceed the value of those benefits." Easterbrook, Statutes' Domains, 50 U. Chi. L. Rev. 533, 541 (1983).

### 2

In deciding whether an oral complaint may be "filed," the Court's opinion examines modern state and federal statutes, which presumably cover complaints filed with an

_____

[3] Kasten argues that excluding intracompany complaints would make the phrases "filed any complaint" and "instituted or caused to be instituted any proceeding" redundant. That is not so. An employee may file a complaint with the Administrator that does not result in a proceeding, or has not yet done so when the employer takes its retaliatory action.

employer. The only relevance of these provisions to whether the FLSA covers such complaints is that none of them achieves that result by use of the term "filed any complaint," and all of them use language that unmistakably includes complaints to employers. See, *e.g.*, 42 U. S. C. §2000e–3(a) (prohibiting retaliation against employees who "oppos[e] any [unlawful] practice"). Any suggestion that because more recent statutes cover intracompany complaints, a provision adopted in the 1938 Act should be deemed to do so is unacceptable. While the jurisprudence of this Court has sometimes sanctioned a "living Constitution," it has never approved a living United States Code. What Congress enacted in 1938 must be applied according to its terms, and not according to what a modern Congress (or this Court) would deem desirable.[4]

3

Kasten argues that this Court should defer to the Department of Labor and Equal Employment Opportunity Commission's (EEOC) interpretations of 29 U. S. C. §215(a)(3). He claims that those agencies have construed §215(a)(3) to protect intracompany complaints "[f]or almost half a century," in litigating positions and enforcement actions. Reply Brief for Petitioner 22. He also argues that although the Department of Labor lacks the authority to issue regulations implementing §215(a)(3), it has such authority for several similarly worded provisions and has interpreted those statutes to include intracompany complaints. *Id.*, at 20.

Even were §215(a)(3) ambiguous, deference would still

_____

[4] Moreover, if the substance of the retaliation provision of any other Act could shed light upon what Congress sought to achieve in the FLSA, it would be the relatively contemporaneous provision of the National Labor Relations Act, §8(4), 49 Stat. 453, codified at 29 U. S. C. §158(a)(4), which did not cover retaliation for employee-employer complaints. See *NLRB* v. *Scrivener*, 405 U. S. 117 (1972).

be unwarranted. If we are to apply our new jurisprudence that deference is appropriate only when Congress has given the agency authority to make rules carrying the force of law, see *Gonzales* v. *Oregon*, 546 U. S. 243, 255–256 (2006), deference is improper here. The EEOC has no such authority. Although the Secretary of Labor and his subordinates have authority to issue regulations under various provisions of the FLSA, see, *e.g.*, §203(*l*); §206(a)(2), they have no general authority to issue regulations interpreting the Act, and no specific authority to issue regulations interpreting §215(a)(3).

Presumably for this reason, the Court's opinion seems to suggest that only so-called *Skidmore* deference is appropriate, see *Skidmore* v. *Swift & Co.*, 323 U. S. 134, 140 (1944).[5] This doctrine states that agencies' views are "'entitled to respect'" to the extent they have "'the power to persuade.'" *Christensen* v. *Harris County*, 529 U. S. 576, 587 (2000) (quoting *Skidmore, supra,* at 140).[6] For

——————

[5] Or perhaps not. The actual quantum of deference measured out by the Court's opinion is unclear—seemingly intentionally so. The Court says that it is giving "a degree of weight" to the Secretary and EEOC's views "given Congress' delegation of enforcement powers to federal administrative agencies." *Ante*, at 12. But it never explicitly states the level of deference applied, and includes a mysterious citation of *United States* v. *Mead Corp.*, 533 U. S. 218 (2001), along with a parenthetical saying that "sometimes . . . judicial deference [is] intended even in [the] absence of rulemaking authority." *Ante*, at 13. I say this is mysterious because *Mead* clearly held that rulemaking authority was necessary for full *Chevron* deference, see *Chevron U. S. A. Inc.* v. *Natural Resources Defense Council, Inc.*, 467 U. S. 837 (1984). I have chosen to interpret the Court as referring to *Skidmore* deference, rather than *Chevron* deference or something in-between, in order to minimize the Court's ongoing obfuscation of this once-clear area of administrative law. See *Mead, supra,* at 245 (SCALIA, J., dissenting).

[6] In my view this doctrine (if it can be called that) is incoherent, both linguistically and practically. To defer is to subordinate one's own judgment to another's. If one has been persuaded by another, so that one's judgment accords with the other's, there is no room for deferral—only for agreement. Speaking of "*Skidmore* deference" to a persuasive

the reasons stated above, the agencies' views here lack the "power to persuade."

## II

The Court's opinion claims that whether §215(a)(3) covers intracompany complaints is not fairly included in the question presented because the argument, although raised below, was not made in Saint-Gobain's response to Kasten's petition for certiorari. Citing this Court's Rule 15.2 and *Caterpillar Inc.* v. *Lewis*, 519 U. S. 61, 75, n. 13 (1996), the opinion says that this Court does "not normally consider a separate legal question not raised in the certiorari briefs." *Ante*, at 15.

It regularly does so, however, under the circumstances that obtain here. (Curiously enough, *Caterpillar*, the case cited by the Court, was one instance.) Rule 15.2 is permissive rather than mandatory: "Any objection to consideration of a question presented based on what occurred in the proceedings below . . . *may* be deemed waived unless called to the Court's attention in the brief in opposition." (Emphasis added.) Accordingly, the Court has often permitted parties to defend a judgment on grounds not raised in the brief in opposition when doing so is "predicate to an intelligent resolution of the question presented, and therefore fairly included therein." *Ohio* v. *Robinette*, 519 U. S. 33, 38 (1996) (internal quotation marks omitted); see also *Vance* v. *Terrazas*, 444 U. S. 252, 258–259, n. 5 (1980).

Kasten's petition for certiorari phrases the question presented as follows: "Is an oral complaint of a violation of the Fair Labor Standards Act protected conduct under the anti-retaliation provision, 29 U. S. C. §215(a)(3)?" Pet. for Cert. *i*. Surely the word "complaint" in this question must be assigned an implied addressee. It presumably does not include a complaint to Judge Judy. And the only plausible

———————
agency position does nothing but confuse.

addressee, given the facts of this case, is the employer. Saint-Gobain's rewording of the question presented in its brief in opposition is even more specific: "Has an employee alleging solely that he orally asserted objections *to his employer* . . . 'filed any complaint' within the meaning of [§215(a)(3)]." Brief in Opposition *i* (emphasis added). Moreover, under this Court's Rule 14.1(a), the question presented is "deemed to comprise every subsidiary question fairly included therein." Whether intracompany complaints are protected is at least subsidiary to Kasten's formulation (and explicitly included in Saint-Gobain's). The question was also decided by the courts below and was briefed before this Court. It is not clear what benefit additional briefing would provide.

Moreover, whether §215(a)(3) covers intracompany complaints is "predicate to an intelligent resolution of the question presented" in this case. The Court's own opinion demonstrates the point. While claiming that it remains an open question whether intracompany complaints are covered, the opinion adopts a test for "filed any complaint" that assumes a "yes" answer—and that makes no sense otherwise. An employee, the Court says, is deemed to have "filed [a] complaint" only when "'a reasonable, objective person would have understood the employee' to have 'put the employer on notice that the employee is asserting statutory rights under the [Act]." *Ante*, at 12 (quoting Tr. of Oral Arg. 23, 26). This utterly atextual standard is obviously designed to counter the argument of Saint-Gobain, that if oral complaints are allowed, "employers too often will be left in a state of uncertainty about whether an employee . . . is in fact making a complaint . . . or just letting off steam." *Ante*, at 11. Of course, if intracompany complaints were excluded, this concern would be nonexistent: Filing a complaint with a judicial or administrative body is quite obviously an unambiguous assertion of one's rights. There would be no need for lower courts to

question whether a complaint is "sufficiently clear and de-
tailed," *ante*, at 12, carries the requisite "degree of formal-
ity," *ante*, at 11, or provides "fair notice," *ibid.*, whatever
those terms may require.

   The test the Court adopts amply disproves its conten-
tion that "we can decide the oral/written question sepa-
rately," *ante*, at 15. And it makes little sense to consider
that question *at all* in the present case if neither oral nor
written complaints to employers are protected, cf. *United
States* v. *Grubbs*, 547 U. S. 90, 94, n. 1 (2006). This Court
should not issue an advisory opinion as to what would
have been the scope of a retaliation provision covering
complaints to employers if Congress had enacted such a
provision.